[Sac. No. 2009. Department One.—February 24, 1914.]

CALIFORNIA SUGAR AND WHITE PINE AGENCY (a Corporation), Appellant, v. W. C. PENOYAR et al., Respondents.

SALE—THIRD PERSON AS ARBITER OF QUALITY OR QUANTITY OF GOODS—CONCLUSIVENESS OF DETERMINATION.—Where the parties agree that the performance or nonperformance of the terms of a contract, or the quantity, price, or quality of goods sold, is to be left to the determination of a third person, his judgment or estimate is binding, in the absence of fraud or mistake.

ID.—CONTRACT TO SELL LUMBER—FAILURE TO DELIVER AGREED AMOUNT—ACTION FOR DAMAGES BY BUYER.—Where owners of a sawmill agree to sell a lumber dealer the product of their mill for a period of one year and to furnish within that time at least a designated quantity of lumber, and the contract expressly provides for the grading of the lumber by a named person, whose decision in that connection shall "be final and conclusive upon the parties," it is error, in an action by the buyer to recover damages for failure of the sellers to deliver the amount of lumber agreed upon, to refuse to strike from the answer an alleged excuse based upon an averment that the grader rejected lumber that he should have accepted, in other words, that he erred in the exercise of his judgment.

ID.—IMPEACHMENT OF ARBITER'S DECISION—MISTAKE OF FRAUD.—The "mistake" which will justify an impeachment of the arbiter's decision is not mere error of judgment, but is the kind of mistake which "amounts to fraud," that is, such mistake as has prevented a fair exercise of judgment upon the question to be determined.

ID.—REFUSAL TO DELIVER LUMBER — REFUSAL TO MAKE PAYMENT.— The refusal of the seller to further perform such contract is not justified because of the buyer's refusal to pay an installment for lumber already delivered, the payment being withheld as an offset to the buyer's claim for damages arising from the seller's breach of the contract.

ID.—ENTIRE CONTRACT—BREACH AS TO ONE PART OR INSTALLMENT.— Where there is an entire contract for the sale of a quantity of goods, to be delivered and paid for in installments, a refusal, without sufficient cause, by the seller to furnish, or by the buyer to take or pay for, any installment, justifies a repudiation of the contract by the party not in default.

ID.—DEFAULT OF ONE PARTY—RESCISSION BY OTHER PARTY WHO IS ALSO IN DEFAULT.—But such rule does not go so far as to justify a party, who is himself in default, in rescinding upon the ground of a subsequent default by the other party. The right to rescind a contract rests only with the party who is without default. One party cannot violate the contract himself, and then seek a rescission on the ground that the other party has followed his example.

ID.—MEASURE OF DAMAGES FOR FAILURE OF SELLER TO DELIVER AGREED QUANTITY OF LUMBER.—The measure of damages for the failure of the seller of lumber to deliver the agreed amount is the excess, if any, of its value to the buyer over the amount which would have been due to the seller under the contract, had it been fulfilled; and the value to the buyer is deemed to be the price at which he might have bought an equivalent in the nearest market.

APPEAL from an order of the Superior Court of Siskiyou County refusing a new trial.   James F. Lodge, Judge.

The facts are stated in the opinion of the court.

Pillsbury, Madison & Sutro, and James F. Farraher, for Appellant.

Taylor & Tebbe, for Respondents.

SLOSS, J.—In this action to recover damages for the breach of a contract, there was a jury trial resulting in a verdict and

judgment in favor of the defendants. The plaintiff appeals from an order denying its motion for a new trial.

The defendants were lumbermen owning timber lands, and operating a sawmill in Siskiyou County. Plaintiff was a corporation engaged in the purchase and sale of lumber. On May 15, 1909, the parties entered into a written contract, whereby defendants agreed to sell, and plaintiff to buy, all the lumber of specified grades which defendants should manufacture at their sawmill during the year 1909. The contract contained this clause: "All of said lumber shall be graded, on the basis of the rules for grading California sugar and white pine as published by the second party (i e., the plaintiff) by Mr. S. J. Hollihan, or some other grader whom the second party may designate for that purpose, and the decision of said Hollihan, or said other grader, with respect to the grades of such lumber, shall be final and conclusive upon the parties hereto, and the cost of inspection and the expense of the inspector shall be borne equally by both parties hereto share and share alike."

It was then provided that the lumber should be delivered in piles and piled by defendants on a described parcel of land, and thereafter loaded on cars as ordered by the plaintiff. The prices for the various grades were stated, and payment was, under the contract to be made as follows: On the tenth day of each month plaintiff was to advance to defendants fourteen dollars per thousand feet for all lumber so delivered (i. e. piled) during the preceding month, and thereafter, when the lumber should have been loaded, plaintiff was to pay defendants, on the tenth day of each month, for all lumber loaded on cars during the preceding month, the prices specified for the various grades, less the fourteen dollars per thousand feet already advanced. By a further provision the first parties (defendants) "agree and guarantee that the amount of lumber of the kind and quality herein contracted to be sold and delivered by the first parties to the second party shall amount to at least one million seven hundred and fifty thousand feet."

The complaint was in three counts. The first is based on a breach of the clause last quoted, alleging that defendants had delivered to plaintiff only nine hundred and ninety-five thousand five hundred feet of lumber (instead of 1,750,000 as

agreed) and that plaintiff had thereby been damaged in the sum of $3,018. The second count alleges that plaintiff had expended, in the inspection of lumber furnished under the contract, the sum of $588.30, one-half of which, or $294.15, the defendants had refused to pay, although bound under the contract to do so. The third count was based upon an advance or loan of $183.57 by plaintiff to defendants.

The defendants admitted the execution of the agreement. The answer to the second and third causes of action consisted merely of denials of the expenditures and advances claimed to have been made by plaintiff.

In answer to the first count, the defendants denied that plaintiff had performed all the conditions of the contract on its part, and in this regard alleged that none of the lumber was graded upon the basis of the rules as published by plaintiff and according to the contract, "but defendants allege the fact to be that all of said lumber so delivered was graded contrary to said rules and contrary to the covenants of said contract; and defendants show that said lumber was graded by said grader, S. J. Hollihan; and in grading said lumber, said grader rejected a large amount thereof, to wit: about five hundred thousand feet, board measure, all of which was of the proper grade to be, and which fairly graded according to said contract, should have been received by plaintiff in fulfillment of said contract; that by reason of said Hollihan rejecting said lumber, defendants were damaged in a large sum, to wit: the sum of $2500." The answer contains a further plea to the effect that the plaintiffs refused to pay defendants the sum of $655.75, due on April 10, 1910, for lumber delivered during March, 1910, and that, upon such refusal, defendants refused further to perform said contract.

The verdict was general in favor of the defendants, and plaintiff specifies the insufficiency of the evidence to sustain a verdict against it on each of the three counts.

We find nothing in the evidence to warrant a finding against the plaintiff on the second and third causes of action.

The second is based on the provision of the contract that "the cost of inspection and the expense of the inspector shall be borne equally by both parties . . ." The contract named S. J. Hollihan as the grader who was to make the inspection, and he did in fact make it. His testimony, which

was not contradicted, was that he was engaged in this work for 77¾ days, and that his wages were one hundred and fifty dollars per month and expenses. He then went on to say that his "wages and expenses while at this work were $3.70 a day." The last statement would seem to make his wages, together with expenses, come to less than the wages alone, figured at the rate of one hundred and fifty dollars per month. The appellant interprets the testimony as meaning that the portion chargeable to defendants was $3.70 per day, which would make the claim on this count $287.67, or $6.48 less than the amount sued for. But even if the total of wages and expenses be taken to have been $3.70 per day, there was nothing offered by defendants to meet plaintiff's demand for reimbursement of one-half of this amount for the 77¾ days.

Likewise, with respect to the third count, the testimony of plaintiff's president was that the unpaid balance of advances made by the plaintiff to defendants was $183.57. Not only was there no direct contradiction of this testimony, but one of the defendants, in a letter, and again while a witness at the trial, admitted an indebtedness for advances of $167.65.

The only attempt to support the verdict on the second count is by the claim that Hollihan was assisted in the grading by one Davidson, Hollihan acting for the buyer and Davidson for the seller. This fact, assuming it to have been established by the evidence and to have been material to the issues raised, constituted no defense. The contract provided for inspection by Hollihan, or some other grader designated by the plaintiff, and evidently contemplated that the grader, while compensated by both parties, was to act primarily as the representative of the buyer. There is, therefore, no ground for the claim that the expense of Hollihan's grading was not incurred pursuant to the contract. In answer to the contention that the verdict on the third count is unsupported, the respondents urge that the sum due was offset by defendants' damage through improper grading, and that plaintiff's refusal to pay the amount due from it in April, 1910, justified defendants in failing to further comply with their contract. As to these suggestions, it is sufficient to say that the defenses thus attempted to be made are affirmative

in their nature, and that neither of them is presented by the answer to the third count.

The first count sought damages for the failure of defendants to deliver one million seven hundred and fifty thousand feet of lumber as agreed. The complaint alleges a delivery of only nine hundred and ninety-five thousand five hundred feet, and the answer admits that no more than 1,075,659 feet were delivered. Two excuses for the failure to deliver the entire amount were pleaded as above set forth. One of them was based on the averments that Hollihan had not graded the lumber according to the rules, but had rejected about five hundred thousand feet of lumber which should have been received by plaintiff under the contract, to the damage of defendants in the sum of two thousand five hundred dollars. At the commencement of the trial, the plaintiff moved to strike from the answer these allegations, on the ground that they were irrelevant and "at variance with the contract." The motion was denied, and plaintiff excepted. The 'ruling was erroneous. The contract provided in express terms that the decision of Hollihan or such other grader as might be designated should "be final and conclusive upon the parties" with respect to the grades of the lumber. Nothing is better settled than the rule that where the parties agree that the performance or nonperformance of the terms of a contract, or the quantity, price or quality of goods sold, is to be left to the determination of a third person, his judgment or estimate is binding, in the absence of fraud or mistake. (9 Cyc. 617; *Palmer* v. *Clark,* 106 Mass. 373; *Nofsinger* v. *Ring,* 71 Mo. 149, [36 Am. Rep. 456] ; *Moore* v. *Kerr,* 65 Cal. 519, [4 Pac. 542] ; *Dunstan* v. *McAndrew,* 44 N. Y. 72; *City St. Imp. Co.* v. *Marysville,* 155 Cal. 419, [23 L. R. A. (N. S.) 317, 101 Pac. 308] ; *American Haw. E. & C. Co.* v. *Butler,* 165 Cal. 497, [133 Pac. 280].) The "mistake" which will justify an impeachment of the arbiter's decision is not mere error of judgment, but is the kind of mistake which "amounts to fraud" (*American Haw. E. & C. Co.* v. *Butler,* 165 Cal. 497, [133 Pac. 280]), i. e., such mistake as has prevented a fair exercise of judgment upon the question to be determined. The answer here does not set up any fraud or mistake affecting the decision of Hollihan. It was clearly intended to charge only that he rejected lumber that he should have accepted—in other

words, that he erred in the exercise of his judgment. And the testimony offered in support of these averments went no further. It appears, simply, that Hollihan and the defendants differed in their opinions regarding the grading of the lumber, and that the defendants and their witnesses thought Hollihan's opinion was wrong.

The error thus committed was material and must be treated as ground for reversal, unless we can say from the record, that the verdict in favor of defendants on the first count should have been reached on some other ground. We cannot so say. The answer, as we have already pointed out, set up as further matter of defense, the refusal of the plaintiff to pay $655.75 due April 10, 1910, and the consequent refusal of defendants to further perform their contract. The weight of authority in this country supports the proposition that, where there is an entire contract for the sale of a quantity of goods, to be delivered and paid for in installments, "a refusal without sufficient cause by the seller to furnish, or by the buyer to take or pay for, any installment, justifies a repudiation of the contract by the party not in default." (*Los Angeles Gas & Elec. Co.* v. *Amalgamated Oil Co.,* 156 Cal. 776, 781, [106 Pac. 55], and cases cited.) But the rule does not go so far as to justify a party who is himself in default in rescinding upon the ground of a subsequent default by the other party. "The rule is general that the right to rescind a contract rests only with the party who is without default. One party cannot violate the contract himself, and then seek a rescission on the ground that the other party has followed his example." (*State* v. *McCauley,* 15 Cal. 458; *Fairchild etc. Co.* v. *Southern R. Co,* 158 Cal. 264, 110 Pac. 951].) It appears that plaintiff's refusal to pay the $655.75 due on April 10, 1910, was not absolute and unqualified. Its liability was recognized, but it withheld the sum as an offset to its claim for damages for the failure to deliver the entire amount of lumber agreed upon. It was then apparent that the lumber cut in 1909, including that delivered and that remaining in defendants' possession, would fall far short of the one million seven hundred and fifty thousand feet required to comply with the contract. Plaintiff had demanded delivery of the balance due. According to plaintiff's testimony, defendants refused to furnish any more lumber, and

the testimony of defendants, while not conceding that this exact language had been used, amounts in effect to an admission that they had informed plaintiff that they would not comply with their obligation to furnish the one million seven hundred and fifty thousand feet. One of the defendants testified that he said to the president of plaintiff that he "would not give him the balance of the lumber out of the cut of 1910 if the grading be continued." The condition was unwarranted, the grading being provided for by the contract. The statement was, then, equivalent to an unqualified refusal to furnish the balance of lumber due, since the 1909 cut was insufficient to meet the requirements. All of this occurred before the tenth day of April, 1910, and before defendants' demand for the payment of the $655.75 due on that day. When, therefore, plaintiff notified defendants that it withheld this sum for application toward the satisfaction of its claim for damages for nondelivery—a claim far exceeding the amount of the payment due—it did not commit an act authorizing the defendants to refuse performance of the obligation on which they were already in default. (*Fairchild etc. Co. v. Southern R. Co.*, 158 Cal. 264, [110 Pac. 951].)

There is no merit in respondents''contention that plaintiff failed to introduce any evidence warranting a finding that it had suffered damage in any specified sum through the failure to deliver the agreed amount of lumber. The measure of damages in a case like the present is defined by section 3808 of the Civil Code as "the excess, if any, of the value of the property to the buyer over the amount which would have been due to the seller under the contract, had it been fulfilled." The value to the buyer is deemed to be the price at which he might have bought an equivalent thing in the nearest market. (Civ. Code, sec. 3354.) The testimony of plaintiff's president on the matter of value was not contradicted, and while the statements made may, in a degree, be open to the criticisms directed against them by defendants' counsel, we have no doubt that the showing was sufficient to have afforded a basis for a finding of market value, and accordingly of damages, in compliance with the rules of the code.

For the reasons above stated, we think there should be a new trial on each of the three causes of action.

The order appealed from is reversed.

Shaw, J., and Angellotti, J., concurred.