[L. A. No. 4195. Department One.—June 12, 1918.]

NORTH AMERICAN DREDGING COMPANY OF NEVADA (a Corporation), Appellant, v. OUTER HARBOR DOCK AND WHARF COMPANY, (a Corporation), Respondent.

APPEAL—TIME FOR APPEAL FROM JUDGMENT PRIOR TO 1915.—Prior to the amendments to the Code of Civil Procedure in 1915, an appeal from a judgment of the superior court, taken within six months from the actual entry of the judgment, was in time.

ID.—PREMATURE NOTICE OF ENTRY OF JUDGMENT.—Where on December 7, 1914, notice of entry of judgment was served, giving the date of entry as December 3d, but in fact judgment was not entered until December 18th, the notice was premature and ineffectual for any purpose.

CONTRACT—ACTION ON QUANTUM MERUIT FOR WORK DONE—PLEADING.—
In an action by a dredging company on a *quantum meruit* for certain dredging work, alleged by the plaintiff to have been done by it for the defendant, a dock company, under a written contract set out in the complaint, whereby the dredging company was to dredge and deposit a certain quantity of material monthly on the dock company's property until the land was filled to a certain grade, payments for work done to be made monthly, it is held that while the complaint was very indefinite and uncertain as to whether the work of filling upon the defendant's property had been completed according to the contract so as to have entitled the plaintiff to be paid at the full contract rate for its work during the month for which suit was brought, the pleading was not so fatally defective as to be subject to a general demurrer.

ID.—RESCISSION—PARTY IN DEFAULT.—A party to a contract who is himself in default in respect to a material part thereof may not rescind.

ID.—PROVISION FOR ARBITRATION.—Where a dredging contract contained a provision that "in case of any disagreement between the parties respecting any matter under this contract, settlement of which is not hereinbefore provided for, the same shall be settled and the rights of the respective parties determined by arbitration, each party hereto to select one arbitrator, and the two so chosen to select a third, and the three arbitrators shall hear all evidence offered, and make investigation of the facts, and the decision of the majority of such arbitrators shall be final and binding on both parties," such provision was not binding upon the parties so as to have required the one who claimed a breach to have first sought recourse to arbitration, before either bringing an action upon the contract or working its rescission and commencing action upon a *quantum meruit*, if otherwise entitled to it.

ID.—ACCEPTANCE OF PAYMENT—WAIVER OF RIGHT TO RESCIND.—Where a dredging company accepted from a dock company the whole amount claimed by the latter to be due from it for a certain month, on a dredging contract providing for monthly payments for the work done in each month, the dredging company could not, with full knowledge that the sum offered was tendered in full performance of the dock company's obligation, receive it as part payment for the work without thereby waiving its right to rescind the contract upon the ground of the dock company's failure to perform.

ID.—ATTEMPTED RESCISSION TOO LATE.—In such case an attempted rescission by the dredging company was too late (even if otherwise entitled to rescind), when after receiving the amount tendered by the dock company for the month of October, with full knowledge of the nature of the dock company's default, it went on with the work which it was required to perform in November, and did not

attempt to exercise the right of rescission until nearly two months later, and until the entire term within which the work under the contract was to be completed had expired.

APPEAL from a judgment of the Superior Court of Los Angeles County.   Curtis D. Wilbur, Judge.

The facts are stated in the opinion of the court.

Chase, Overton & Lyman, and Overton, Lyman & Plumb, for Appellant.

Andrews, Toland & Andrews, for Respondent.

RICHARDS, J., *pro tem.*—This is an appeal from a judgment rendered in the defendant's favor after its demurrer to the plaintiff's third amended complaint had been sustained, the plaintiff declining to further amend its pleading.   Respondent urges a preliminary objection to the hearing of this appeal upon the ground that it was taken too late.   On December 7, 1914, attorneys for the appellant were served with a notice of the entry of judgment in the action on December 3, 1914.   The judgment was not, however, actually entered until December 18, 1914.   Such notice was, therefore, premature and ineffectual for any purpose, since there could be no valid notice of the existence of something which did not in fact exist.   This appeal was taken in February, 1914, prior to the changes in the statutes regulating the procedure on appeal enacted in 1915, and which dispensed with the requirement of notice of entry of judgment in order to set in motion the time for taking appeals.   As the statute stood at the time this appeal was taken, an appeal from a judgment was required to be taken within sixty days after *notice* of the entry of judgment; or, in any event, within six months after entry of the judgment.   (*Foss* v. *Johnstone,* 158 Cal. 119, [110 Pac. 294].)   In the absence of a valid notice of the entry of the judgment, the appellant under the former state of the statute had six months from the date of the actual entry of judgment within which to take its appeal, and having taken it within such time, its appeal is properly before this court.

The action was one upon *quantum meruit* for work and labor performed.   The complaint alleged that the plaintiff and the defendant had upon March 29, 1912, entered into a

written contract for the doing of certain dredging work adjacent to certain lands in the harbor of San Pedro, of which lands the defendant was in possession, and also the doing of certain filling upon said lands. The contract was made a part of the complaint. By its terms the plaintiff was to dredge certain channels, shown on a map attached to the contract, designated as the east and west channels and the north slip of the Watchorn Basin. The east and west channels were to be completed to the thirty-foot contour line within five months from date—by August 29, 1912. At least one hundred and fifty thousand cubic yards of dredged material were to be deposited on the property of the Dock Company each ninety days until the land was filled to a certain grade, and at least thirty thousand cubic yards each month. All filling was to be completed by November 1, 1912, and a certain portion, the ''Outer Mole,'' was to be completed within ninety days. All the work of dredging and filling was to be completed by December 31, 1912. The Dock Company was to construct in advance of the dredging, and to maintain all levees and bulkheads necessary to retain material excavated. The payment which the Dredging Company was to receive was based entirely on amount of material dredged, being twenty-four cents per cubic yard in certain cases and twenty-nine cents in others. A partial payment of twelve cents per cubic yard is also provided for in certain cases. Payment was to be made on or before the tenth of each month for all work done the previous month, ten per cent being reserved until the next month as a guaranty for faithful performance. All work was to be estimated each month by the Dock Company's engineers, which estimates might be checked by the Dredging Company's engineers, but in making final settlement for any work such estimates were to be disregarded and the actual amount of material excavated was to control. All payments were to be made promptly when due. The Dredging Company was to prosecute all work diligently until completion. Time and minimum quantities of work to be done during a specified time were of the essence of the contract. In case of any disagreements between the parties, they were to be settled by arbitration.

The questions raised upon this appeal involve the sufficiency of the plaintiff's complaint viewed in the light of certain clauses of this contract and also of certain other exhibits,

which it made by reference a part of it. The appellant contends that the averments of its complaint sufficiently show that it was not in default in respect to its performance of the contract at the time it undertook to rescind it, but that, on the other hand, the defendant was in default in respect to the payments to be made by it thereunder; and that in view of such default upon the defendant's part, plaintiff had a right to stop the work, rescind the contract, and sue in *quantum meruit* for the reasonable value of the work and labor performed. The first point urged by the appellant under this general contention is that the defendant, having failed and refused on November 11, 1912, to pay at the rate of twenty-four cents per cubic yard for the material dredged during the month of October, such refusal constituted a violation of the contract which entitled the plaintiff to rescind it and bring and maintain this action. The specific answer made by the respondent to this contention is that the complaint does not sufficiently show that the defendant was in such default. The plaintiff avers in one of the paragraphs of its complaint that prior to November 1, 1912, to wit, on or about August 3, 1912, the former of said dates being that fixed in the contract for the completion of the work of filling to be done upon the property of the defendant, the plaintiff "fully performed and completed all filling of the property of the defendant as in said contract specified and provided." If this averment were the only one upon this subject in the complaint, it would doubtless have sufficed to show plaintiff's performance of the terms of the contract as to the amount of filling to be done upon the defendant's property within the time stipulated in the contract, so as to have entitled it to the full payment of twenty-four cents per cubic yard for the work of dredging done by it during the months of September and October; but the complaint goes further, and alleges that the defendant did a large amount of dredging during the month of September, 1912; that as to a portion of the material dredged during September "the plaintiff elected to dispose of it elsewhere than upon the fill provided for in said contract"; that on the 10th of October, 1912, the defendant presented to plaintiff the statement and estimates of its engineers in relation to the work done and payments due for September, which statement is attached to the complaint, marked exhibit "C," and made a part thereof. From such exhibit it appears that as to the portion of the

material dredged during September which the plaintiff elected to dispose of elsewhere than upon the fill, the defendant offered to pay at the rate of twelve cents per cubic yard and no more. No other conclusion can be drawn from this statement than that the defendant did not consider that the work of filling provided for in the contract had been fully performed. The complaint then proceeds to aver that the plaintiff refused to accept the sum tendered, and for a short time ceased work; but on October 19, 1912, accepted from the plaintiff a payment which, so far as the complaint discloses, was based upon the estimate of twelve cents per cubic yard for the dredged material deposited elsewhere than upon the fill; but that the plaintiff accepted said sum under an alleged mutual agreement between the parties to the contract "that each party should, and then and there did, expressly agree to waive any and every default of the other party, but plaintiff did not agree to waive its rights to claim on final settlement full remuneration for all work performed." These averments in the complaint, to say the least of them, shed grave doubt upon the question as to whether or not the amount of filling required by the contract had been fully done prior to the 10th of October, 1912; but the complaint does not stop here, but goes further in the way of increasing this doubt by proceeding to aver that the plaintiff desired to place all the material dredged during the month of October on the defendant's fill and offered to do so, but that the defendant refused to allow the plaintiff to deposit any more material upon its fill; and that, for that reason, it deposited its dredged material for that month elsewhere. Notwithstanding this alleged fact, which would seem to indicate that the plaintiff did not at that time consider its work upon the fill completed, the complaint shows that the defendant's engineers, on November 10, 1912, in their statement of the work done during October, and of the sum due thereon, again estimated the amount to be paid by the defendant for such work on the basis of twelve cents per cubic yard; and that the defendant presented such statement and estimate to the plaintiff on said day and tendered the amount so estimated to be due upon said basis. This report and estimate is also made a part of the complaint. The only theory upon which such estimate could have been prepared and presented on the part of the defendant is that the defendant did not then consider

that the work of filling provided for in the contract had been fully performed. The complaint proceeds to allege that while the plaintiff then demanded payment for the dredging done by it during October at the full rate of twenty-four cents per cubic yard, it accepted the sum tendered by the defendant as a partial payment thereon, but subsequently demanded the payment of the remainder claimed by it to be due at the rate of twenty-four cents per cubic yard for said October work. This the defendant refused to pay, but, notwithstanding such refusal, the plaintiff continued to dredge until December 4, 1912, when it ceased all work under the contract. Negotiations for the settlement of the controversy which had thus arisen between the parties were entered upon and continued until January 29, 1913, when the plaintiff undertook to work a rescission of the contract. The complaint also shows that during this period of negotiation in response to letters from the plaintiff to the defendant in an endeavor to arrive at a basis of adjustment of their differences, the defendant stated that the contract provided for an arbitration of their differences and suggested a recourse to that method of settling their controversy. The plaintiff, however, did not adopt or act upon this suggestion, but undertook to rescind the agreement and sue in *quantum meruit* without having sought to invoke the method provided in the contract for settling the controversy which it concedes had arisen. The provision of the contract providing for arbitration for the adjustment of such differences between the parties to it as might arise is section 7 of article VI thereof, which reads as follows:

"In case of any disagreement between the parties respecting any matters under this contract, settlement of which are not hereinbefore provided for, the same shall be settled and the rights of the respective parties determined by arbitration, each party hereto to select one arbitrator and the two so chosen to select a third, and the three arbitrators shall hear all evidence offered and make investigation of the facts, and the decision of the majority of such arbitrators shall be final and binding on both parties."

As to the first question presented by the foregoing recital of facts as shown in the complaint as to whether the work of filling upon the defendant's property had been completed according to the terms of the contract so as to have entitled

the plaintiff to be paid the full rate of twenty-four cents per cubic yard for its work of dredging done during October, the complaint, while very indefinite and uncertain, cannot be said to be so fatally defective as to be subject to a general demurrer; and as to its uncertainty in this respect, the record discloses that no special demurrer is aimed at it upon this specific ground.

Passing this question, therefore, we come to the next point urged by the respondent as a reason for not sustaining this appeal. The complaint affirmatively alleges that a controversy and disagreement arose between the parties to the contract respecting the amount of money which the plaintiff was entitled to receive from the defendant for the dredging work done during September and October. If this controversy and disagreement was one which was contemplated and properly included within the terms of section 7 of article VI of the contract above quoted, then the question arises as to whether the plaintiff was bound to submit or at least offer in good faith to submit the matter to arbitration before it could be entitled to work a rescission of the contract, based solely upon the defendant's alleged failure to make the payments respecting the proper amount of which such disagreement and controversy had arisen. It is elementary that a party to an agreement may not rescind it while himself in default in respect to a material part thereof. (*Golden Gate Land Co.* v. *Sahrbacher,* 105 Cal. 114, [38 Pac. 635]; *Fairchild etc. Co.* v. *Southern Refining Co.,* 158 Cal. 264, [110 Pac. 951]; *California Sugar etc. Agency* v. *Penoyar,* 167 Cal. 274, [139 Pac. 671].) The respondent invokes this principle to defeat this action, relying, in the first instance, upon the plaintiff's failure to invoke the arbitration clause in the agreement. The appellant, however, insists that it cannot be given application to the facts of this case as they appear upon the face of its complaint, for the reason that the arbitration clause in the contract is void as an attempted interference with the power and jurisdiction of the courts to decide controversies between parties to contracts. There is respectable authority, both in this state and elsewhere, sustaining this contention. (*Holmes* v. *Richet,* 56 Cal. 307, [38 Am. Rep. 54]; *Loup* v. *California S. R. R. Co.,* 63 Cal. 97; *Old Saucelito Land etc. Co.* v. *Commercial Union Assur. Co.,* 66 Cal. 253, [5 Pac. 232]; *Hamilton* v. *Home Ins. Co.,* 137 U. S. 370, [34

L. Ed. 708, 11 Sup. Ct. Rep. 133].)   The respondent, however, cites the cases of *California Sugar etc. Agency* v. *Penoyar,* 167 Cal. 274, [139 Pac. 671], and other cases, to the effect that where parties to a contract of the character of that in question here have agreed upon or authorized an arbiter to determine the existence of any fact which may be matter of dispute between them, the decision of such arbiter to be binding and conclusive upon the parties, such a clause in the contract is valid and binding upon the parties.   The distinction, however, between this line of cases and those upon which the appellant relies is well drawn in the early case of *Holmes* v. *Richet, supra,* wherein the court, in quoting from the case of *President etc. of Delaware & H. Canal Co.* v. *Pennsylvania Coal Co.,* 50 N. Y. 250, says: ''The distinction between the two classes of cases is marked and well defined.   In one case, the parties undertake by an independent covenant or agreement to provide for an adjustment and settlement of all disputes and differences by arbitration, to the exclusion of the courts; and in the other they merely, by the same agreement which creates the liability and gives the right, qualify the right, by providing that, before any right of action shall accrue, certain facts shall be determined, or amounts and values ascertained; and this is made a condition precedent, either in terms or by necessary implication.   This condition being lawful, the courts have never hesitated to give full effect to it.''

In the case at bar the clause in the contract comes clearly within the line of inhibition, and hence must be held to have not been binding upon the parties to the agreement so as to have required the plaintiff to have first sought recourse to arbitration before either bringing an action upon the contract or working its rescission and commencing this action upon *quantum meruit* if otherwise entitled to rescind it.

The respondent contends, however, that the plaintiff was not otherwise entitled to rescind this contract for the following reasons shown upon the face of its complaint: The plaintiff alleges that on November 10, 1912, the defendant, acting upon the report and estimates of its engineers, offered to pay the plaintiff for the amount of its dredging work done during the month of October a sum calculated at the rate of twelve cents per cubic yard; the plaintiff, while insisting that it was entitled to be paid a sum calculated at the rate of

twenty-four cents per cubic yard for such work, nevertheless accepted the sum tendered by the plaintiff as a partial payment thereon, and thereafter continued its dredging work up to December 4, 1912, when it stopped all work under said contract.  It also appears that between said date and January 29, 1913, when the plaintiff finally undertook to declare the contract rescinded, the parties were negotiating for a compromise of their differences, during all of which time the defendant was insisting that its obligation under the contract had been fully met by the payment it had tendered and the defendant accepted on November 10, 1912.  Under these circumstances affirmatively disclosed by the plaintiff's complaint, the respondent contends, we think, correctly that the plaintiff had waived and lost its right to a rescission of the contract.  This case is not like the case of *California Sugar etc. Agency* v. *Penoyar, supra,* and the cases cited therein, where it was held that the failure or refusal of a party without sufficient cause to pay installments due upon a contract justified a repudiation of the contract by the party not in default.  In this case the defendant tendered to the plaintiff the whole amount which it claimed to be due for the work of dredging done in October; and the plaintiff, with full knowledge that the sum so offered was tendered in full performance of the defendant's obligation, and not otherwise, accepted and received the same.  It is true the plaintiff states that it accepted and received said sum as part payment for such work, but this it could not do without thereby waiving its right to rescind the contract upon the ground of the defendant's failure to fully perform it.  While the contract was divisible as to each installment due upon it, the installments were not divisible so as to entitle a party to accept a portion of an installment tendered as the full sum due thereon and thereafter be permitted to repudiate the contract because the balance of the installment had not been tendered or paid.  To permit this would be to allow the party to receive a portion at least of the benefits accruing to him under the contract with one hand while preparing to destroy it with the other.  (*Wolfert* v. *Caledonia Springs Ice Co.,* 195 N. Y. 118, [21 L. R. A. (N. S.) 864, 88 N. E. 24] ; *Lyon* v. *Bertram,* 20 How. (U. S.) 149, [15 L. Ed. 847].)  But there is another reason appearing upon the face of the plaintiff's complaint why the right of rescission of the contract, if it ever existed,

was lost to it at the time of its attempted exercise. When the defendant made its tender of the sum claimed by it to be due from it to the plaintiff for the dredging work done during October, it was equally known to both parties that the sum tendered was the whole sum which was due on that date according to the reports and estimates of the defendant's engineers. The plaintiff was thus fully informed of the exact nature and extent of the defendant's default, if any, in the fulfillment of the terms of its contract. Knowing this, it not only accepted the sum then tendered as a partial payment upon the contract, but it also went on with the work which, under the contract, it was to perform during the month of November and continued with the performance of such work for nearly a month after the defendant's default, if any, and the nature, extent, and reasons thereof were fully known to it; nor even then did it attempt to exercise the right of rescission until nearly two months more had elapsed and until the entire term within which the work under the contract was to have been completed by it had expired. We think that under these circumstances the plaintiff's attempted rescission of the contract, if its right to such rescission ever existed, came too late.

For the foregoing reasons the judgment is affirmed.

Shaw, J., and Sloss, J., concurred.