## MOORE–SEAVER GRAIN CO. v. BLUM MILLING CO. et al. (No. 65.)

(Court of Civil Appeals of Texas. Waco. May 1, 1924. Rehearing Denied June 26, 1924.)

1. Parties ⬉92(3) — Pleading ⬉193(6) — Misjoinder of parties or causes of action cannot be raised by general demurrer.

The question of misjoinder of parties or causes of action cannot be raised by a general demurrer.

2. Appeal and error ⬉187(2), 193(2)—Misjoinder of parties or causes of action cannot be raised for first time in appellate court.

The question of misjoinder of parties or causes of action cannot be raised for the first time in the appellate court.

3. Contracts ⬉143—Courts will not make contracts for parties or vary contracts made.

It is not the province of courts to make contracts for parties or to vary the contracts which parties have made.

4. Evidence ⬉397(1)—Terms of contract reduced to writing after part performance cannot be varied by parol testimony.

Where a parol contract has been partly performed and afterwards reduced to writing, its terms cannot be varied by parol testimony.

5. Contracts ⬉247 — Evidence ⬉397(1) — Parol contract merged in written contract where contract is reduced to writing after part performance, and writing becomes sole expositor of terms.

When a parol contract is partly performed and then reduced to writing, it is presumed that the parol contract is merged into the written contract and the written contract becomes the sole expositor of the terms agreed on.

6. Evidence ⬉413—Parol testimony held inadmissible as in conflict with provision of contract for sale of grain, making official grades conclusive.

Where contract for sale of grain shipped in interstate commerce provided that "all sales of grain are on Kansas City official weights and Kansas City official grades existing at the time of delivery, which shall be conclusive between the parties hereto," the parties were bound by the grade as established by the official grain grader in Kansas City, under United States Grain Standards Act, §§ 4–7 (U. S. Comp. St. §§ 8747½c–8747½f), and parol evidence was not admissible to prove that the grain was not of such grade, in the absence of pleading and proof of mistake or fraud in grading by official inspector.

On Rehearing.

7. Contracts ⬉16—May be made over telephone.

Parties may make a binding contract over the telephone.

8. Sales ⬉90—Written confirmation by seller not signed or accepted by purchaser does not necessarily supersede contract made over telephone.

A written confirmation by the seller which is not signed or accepted by the purchaser does not necessarily supersede the positive and definite contract made over the telephone.

9. Contracts ⬉245(2)—Evidence ⬉397(1) —Verbal contract not necessarily merged in written; contract as reduced to writing binding in absence of pleading that it does not embrace previous oral contract.

A verbal contract is not at all times merged into the written contract thereafter signed, but the written contract is binding on the parties in the absence of a pleading that the written contract does not embrace the terms of the oral contract.

---

⬉For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**10. Commerce ⬦�longrightarrow⟩40(1)—Contract for sale of wheat to be shipped from one state into another involved interstate commerce.**

A contract for the sale of wheat to be shipped from one state into another involved interstate commerce.

Barcus, J., dissenting.

Appeal from District Court, Hill County; Horton B. Porter, Judge.

Suit by the Blum Milling Company and others against the Moore-Seaver Grain Company and others. From judgment for plaintiff against named defendant, it appeals. Reversed and remanded in part, and affirmed in part.

Morrison, Nugent, Wylder & Berger, of Kansas City, Mo., and Wear, Wood & Wear, of Hillsboro, for appellant.

Terry, Cavin & Mills, of Galveston, and Collins, Dupree & Crenshaw and Morrow & Stollenwerck, all of Hillsboro, for appellees.

BARCUS, J. On April 7, 1922, appellee, over the telephone, purchased from the agent of appellant at Fort Worth, Tex., 1,000 bushels of No. 2 red wheat at $1.52½ per bushel. On the same day appellant, from its Kansas City office, mailed to appellee its written confirmation of said sale. On April 10, 1922, appellant delivered the car of wheat in controversy to appellee Atchison, Topeka & Santa Fé Railway at Kansas City and prepaid the freight to Blum, Tex. It attached a bill of lading to the draft for $1,525 and drew on appellee for said amount. The draft was paid and bill of lading taken up by appellee milling company before it had any opportunity to inspect the wheat. The car of wheat arrived at Blum, Tex., on April 18th, and when opened, appellee milling company's witnesses testified the wheat was musty, had a bad odor, had weevils in it, and was totally unsuited for grinding into flour. Appellee milling company brought this suit for $1,525, the purchase price of the wheat, against appellant and against appellees Atchison, Topeka & Santa Fé Railway Company and Gulf, Colorado & Santa Fé Railway Company, alleging that it bought 1,000 bushels of No. 2 red wheat from appellant at $1.52½ a bushel for the purpose of using same in its milling business and grinding same into flour, and that the appellant had sold same to it for said purpose, and alleged that appellant had breached its contract in that the wheat when loaded on the cars at Kansas City was not No. 2 red wheat and same was not suited for use in milling purposes, and was when loaded on the cars in Kansas City and when it arrived at Blum totally worthless. It alleged that as soon as it discovered the condition of said wheat it tendered same to appellant and appellant had refused to accept same and return the money which it had received. The milling company further alleged, if the wheat was in good condition when loaded at Kansas City, that by reason of the negligence of the railway companies it had been damaged while in transit. The railway companies filed general demurrers and general denials. The appellant filed a general demurrer, and for special answer alleged that it sold to appellee milling company 1,000 bushels of No. 2 red wheat, to be delivered by it to the Atchison, Topeka & Santa Fé Railway Company at Kansas City, and that under the terms of the contract it was agreed that the wheat should be weighed and graded at Kansas City, Mo., by officials of said state and that the weights and grades of such grain as made by said officials should be binding and conclusive between the parties, and that the wheat it did deliver to said railway company was weighed and graded by the official inspector in Kansas City, as per said contract. Appellant requested an instructed verdict, which was refused, and it excepted.

The cause was submitted to the jury on 24 special issues. The jury found that the wheat was not when delivered by appellant to the railway company nor at the time it reached Blum, Tex., No. 2 red wheat, and was not in good condition; that the difference in the case market value of No. 2 red wheat and that actually delivered on the Kansas City market and at Blum, Tex., was $1 per bushel; that the wheat when delivered to the railway company at Kansas City was not suitable for milling purposes; that the appellant did not deliver No. 2 red wheat at Kansas City, Mo., according to the Kansas City official weights and Kansas City official grades. The jury further found that the wheat was not damaged while in the possession of the railway companies. On the findings of the jury and additional findings by the court, judgment was rendered for appellee milling company against appellant for $1,000, and judgment was entered in favor of the Atchison, Topeka & Santa Fé Railway Company and the Gulf, Colorado & Santa Fé Railway Company, appellees herein. No appeal was taken from and no complaint is made with reference to the judgment rendered in favor of the railway companies.

[1, 2] Appellant presents a number of assignments of error. It will not be necessary to discuss each one separately. Appellant contends that its general demurrer to plaintiff's petition should have been sustained because plaintiff's pleadings show a misjoinder of parties and causes of action, in that plaintiff seeks to hold appellant for the value of the wheat on the theory that it was worthless when delivered at Kansas City, and seeks to hold the railway companies liable because they so handled the wheat while in their possession that it was damaged to the extent that it became worthless. The appellant did

not, in limine, make such defense in the trial court. The question of misjoinder of parties or causes of action cannot be raised by a general demurrer, and cannot be raised for the first time in the appellate court. Farmers' National Bank v. Merchants National Bank (Tex. Civ. App.) 136 S. W. 1120; Kemendo v. Fruit Dispatch Co., 61 Tex. Civ. App. 631, 131 S. W. 73; Gulf, Colorado & Santa Fé Ry. Co. v. Stewart (Tex. Civ. App.) 141 S. W. 1022; article 1906 Revised Statutes.

Appellant complains of the action of the trial court in permitting the officers of appellee milling company to testify as to the condition of the wheat at the time it reached Blum, Tex., because same was an effort to vary the terms of a written contract and because the condition the wheat was in when it arrived at Blum was irrelevant and immaterial and did not in any way tend to show the condition of the wheat when it was delivered to the railway company at Kansas City. The evidence shows that Martin, for the milling company, purchased a car of No. 2 red wheat over the telephone from Ferguson, agent of appellant, at Fort Worth, on April 7th. On the same day appellant wrote appellee as follows:

"We hereby confirm sale to you to-day made by our Fort Worth office for 1,000 bushels of No. 2 red wheat, price $1.52½ per bushel, immediate shipment over the A., T. & S. F. Railway, destination Blum, Texas. * * * Conditions and agreements set forth on the back of this confirmation (or contract) are made a part hereof. Failure to take exceptions at once to any part of this contract shall be construed as an acceptance of the same by the buyer as embodying all the terms of the sale."

[3-6] There are a number of conditions printed on the back of the confirmation letter, the only one material in this case being:

"Unless otherwise stated, all sales of grain are on Kansas City official weights and Kansas City official grades existing at the time of delivery, which shall be conclusive between the parties hereto."

Martin testified that when he received the letter of confirmation he wrote the word "accepted" thereon and signed the Blum Milling Company's name thereto and that it was the contract he and Ferguson had made. The car of wheat was shipped from Kansas City on April 10th. The acceptance of the confirmation from the milling company was not received by appellant until April 11th. At the time the car of wheat was loaded at Kansas City, C. M. Swearingen, an official grain inspector at Kansas City, inspected the wheat and certified to the fact that it was No. 2 red wheat. It is an established principle of law that "as men bind themselves, so shall they be bound." It is not the province of courts to make contracts for parties or to vary the contracts which parties have made. Under the contract as made between appellee mill-

ing company and appellant, they obligated and bound themselves to sell and purchase the wheat on Kansas City official grades and agreed that said official grades should be conclusive between them. While the record in this cause shows that the letter of confirmation was not received by appellant until after it had shipped the wheat, there is nothing in the record to show that the written contract was not the real contract as made. Where a parol contract has been partly performed and afterwards reduced to writing, the same rule with reference to varying its terms by parol testimony is applicable. 22 C. J. 1107. And when a parol contract is partly performed and then reduced to writing, it is presumed that the parol contract is merged into the written contract and becomes the sole expositor of the terms agreed on. Cable v. Foley, 45 Minn. 421, 47 N. W. 1135. The appellee milling company did not allege that the written contract in any way varied from the oral contract made over the telephone and did not allege any fraud or any fact that would authorize testimony to be offered to contradict or vary the terms of the contract as written. The record shows that the official grain inspector in Kansas City inspected and graded the wheat when it was loaded on the car at Kansas City and graded it No. 2 red wheat, and in the absence of any pleading challenging the contract as written, the testimony of witnesses attempting to show that the wheat was not No. 2 red wheat was irrelevant, immaterial, and inadmissible. The parties had a right to obligate themselves to be bound by the grading as made by the official grader at Kansas City, and, in the absence of any pleading that the written contract was not the real contract or that the official grading was fraudulently done, the parties are bound by the grade as established by the official grain grader in Kansas City. The trial court was in error in not sustaining appellant's objection to the testimony of the witnesses with reference to the condition of the wheat when it reached Blum, Tex., because it was an effort to vary a written contract with no pleading to support same.

For the errors indicated, the cause as between appellant and the Blum Milling Company, appellee, is reversed and remanded, and as to the appellees Atchison, Topeka & Santa Fé Railway Company and the Gulf, Colorado & Santa Fé Railway Company the cause is affirmed.

On Rehearing.

GALLAGHER, C. J. Appellee, Blum Milling Company, has filed an elaborate and able motion for rehearing.

[7-9] There is no question that parties may make a binding contract over the telephone which can be enforced, and the rule is also well established that a written confirmation by the seller which is not signed nor accepted by the purchaser does not necessarily super-

sede the positive and definite contract made over the telephone. Flour Mills v. Farmers Elevator Co. (Mo. App.) 247 S. W. 480; Paducah Mill & Elevator Co. v. Marshall (Ky.) 246 S. W. 30. It is equally true that a verbal contract is not at all times merged into the written contract thereafter signed. Cotulla v. Barlow (Tex. Civ. App.) 115 S. W. 297; same case, 107 Tex. 37, 173 S. W. 875. Where, however, a verbal contract is made and thereafter reduced to writing, in the absence of a pleading that the written contract does not embrace the terms of the oral contract, the written contract becomes and is binding upon the parties. Martin, for appellee Blum Milling Company, testified that he made the verbal contract over the telephone and that thereafter, when the letter of confirmation or contract was received, he, for the Blum Milling Company, accepted and signed same, and he testified that it was the contract as made by him with the appellant over the telephone. Appellant, among other things, pleaded:

"That it was a part of the contract of sale between it and appellee that said wheat was to be weighed and graded at Kansas City, Mo., by officials of said state appointed for the purpose of weighing and grading such shipments of grain, and that the weights and grade of such grain made by such officials should govern in the performance of said contract and should be binding on the parties to said contract, and be conclusive between said parties; * * * that all costs and freight prices contemplated final delivery at Kansas City with freight allowance to the destination specified. * * *"

Appellant in this connection further pleaded:

"That pursuant to the terms of said contract and in compliance therewith on its part, it did on or about the ------ day of April, 1922, load 1,000 bushels of No. 2 red wheat in a car, being car A., T. & S. F. No. 24021, and that said 1,000 bushels of wheat was then and there good, sound No. 2 red wheat and was in all respects in full compliance with the terms and requirements of said contract of sale; and that this defendant caused the same to be inspected by an official inspector, to wit, by one C. R. Swearingen, who was then and there an official inspector, duly appointed and licensed for such business under the United States Grain Standards Act to inspect grain in the city of Kansas City, Mo., and that said inspector certified that said car of wheat was No. 2 red wheat and was without damage of any kind."

Appellant further pleaded:

"That it caused said wheat to be weighed by an official weigher to wit, P. H. Attaway, an official weigher appointed under the laws of the state of Missouri, to weigh grain at Kansas City, Mo., and that said weigher weighed the said grain and certified that said shipment contained 1,000 bushels of wheat; to wit, 60,-000 pounds of wheat."

Appellant further alleged in substance that it billed said car of wheat to appellee at Blum, Tex., obtained bill of lading, attached the same to demand draft for the purchase money, sent the same to the bank at Blum, Tex., to be delivered to appellee upon payment of said draft, and that the same was in all respects in full compliance with the terms of said contract of sale, and further alleged that it had in good faith performed its said contract of sale. Appellant attached a copy of the confirmation or contract of sale to said pleading and made the same a part thereof.

Appellee filed no reply of any kind to said pleadings of appellant. It did not in its petition attempt to anticipate the issue so pleaded by appellant, and did not in its pleadings anywhere attack the official weight or official grade of said wheat as fraudulent or as the result of gross mistake on the part of such inspector or such weigher.

Appellant introduced the confirmation or contract of sale in evidence. One of the stipulations of said contract was that the prices quoted contemplated final delivery at Kansas City, Mo., with freight allowance to destination specified. Another stipulation was as follows:

"Unless otherwise stated, all sales of grain are on Kansas City official weights and Kansas City official grades existing at the time of delivery, which shall be conclusive between the parties hereto."

Appellant also introduced in evidence a grain inspection certificate as follows:

"Grain Inspection Certificate.

"Missouri State Grain Inspection Department (Out Inspection).

"Kansas City, Mo., April 10, 1922.

"I hereby certify that I hold a license under the United States Grain Standards Act to inspect and grade the kind of grain covered by this certificate; that on the above date I inspected and graded the following lot or parcel of grain and that the grade thereof, according to the official grain standards of the United States, is that stated below:

| Car Initials. | Car No. | For Account of. | Location. | Wheat. |
|---|---|---|---|---|
| ATSF | 24021 | Moore-Seaver Grain Co. | KCS Elev. | Amount—carload. |

Grade: 2 Red Wheat

Test
"Analysis—weight 58 lbs. Moisture, X—%; damaged X—%. F. M. O. T. D. X—%.

Remarks: None
2                 B

"C. R. Swearingen, Licensed Inspector.

"Countersigned: M. C. Fears, Chief Inspector."

Appellant also introduced weight certificate as follows:

"Out Weight Certificate.

"Grain Weighing Department, State of Missouri.

"T. J. Hedrick, State Warehouse Commissioner, 333–36 Board of Trade Bldg.,
Kansas City, Mo.

"State weighing fee, 50 cents.                    "Kansas City, Mo.    4/10, 1922.

| Car No. | Initials. | Weighed At. | Contents. | State Weight Pounds. | Remarks. |
|---|---|---|---|---|---|
| 24021 | A. T. | Kcselevator | Wht. | 60,000 | None |

"Above weight certified to be correct.

"(Duplicate.)"

"Weighed in hopper scale.
"[Signed]    P. H. Attaway,
"Missouri State Weigher.

Appellant also introduced the testimony of the inspector Swearingen to the effect that he was at the time in question employed as grain inspector in the Missouri state grain inspection department, and held at that time a license under the United States Grain Standards Act to inspect and grade the above wheat and other grains; that he inspected the car of wheat in question and graded it as No. 2 red wheat, and that it was such. He further testified that he made such inspection in his regular course of duties as a state grain inspector; that he made a record of such inspection; and that the certificate introduced in evidence was issued therefrom.

Appellant also introduced the testimony of the weigher, Attaway, to the effect that he was at the time in question employed by the Missouri state grain inspection department and conducted the business according to the manner prescribed by the rules and regulations governing the weighing of grain, as issued by the Missouri state grain inspection department; that he weighed the car of wheat in question and that it weighed 60,000 pounds; that he reported his action in weighing said car to the office of the Missouri state grain inspection department, and that the certificate introduced in evidence was issued in pursuance of such action and report.

Appellant introduced a prepaid shipper's order bill of lading, issued to it by the A., T. & S. F. Railway Company for the transportation of said car of wheat from Kansas City and the delivery of the same at Blum, Tex., which was in accordance with the provisions of the contract or confirmation of sale with reference to the routing. Said bill of lading was attached to a sight draft on appellee at Blum, Tex., which draft it paid and with which it received the said bill of lading, which was also in accordance with the terms of said confirmation or contract.

Appellant objected to all of the appellee's evidence concerning the condition of the wheat when it arrived in Blum and the condition appellee's witnesses stated it must have been in when loaded in the car at Kansas City, and to all of appellee's evidence that such wheat was not No. 2 red wheat at Kansas City when so loaded, on the ground, among others, that such evidence was immaterial and irrelevant and that the terms of said contract controlled. At the close of the evidence appellant requested a peremptory charge to the jury to find in its favor, which being refused, it then requested the court to submit the following issue:

"Did the defendant, Moore-Seaver Grain Company, deliver No. 2 red wheat at Kansas City, Missouri, according to Kansas City official weights and Kansas City official grades?"

The court submitted such issue, and the jury answered same, "No."

The admission of said evidence over such objection and the refusal of such peremptory charge are assigned as error by appellant, and appropriate propositions are submitted based on such assignments. Appellant also by proper assignment assails the negative finding of the jury on its said special issue as being without support in and contrary to the evidence.

Congress, in August, 1916, enacted a Law known as the United States Grain Standards Act. 39 Stat. L. 482; Fed. Stat. Ann. 1918, Supp. p. 7; Barnes' Fed. Code, §§ 8192 to 8202, inclusive (U. S. Comp. St. §§ 8747½– 8748½k). Under the provisions of said act, the Secretary of Agriculture is authorized to investigate the handling, grading, and transportation of grain, and to fix and establish, as soon as may be after the enactment thereof, standards of quality and condition for wheat and other grains, which standards when fixed and established by such officer are to be known as the official standards of the United States. Section 4 of said act (U. S. Comp. St. § 8747½c) is in part as follows:

"That whenever standards shall have been fixed and established under this act for any grain no person thereafter shall ship or deliver for shipment in interstate or foreign commerce any such grain which is sold, offered for sale, or consigned for sale by grade unless the grain shall have been inspected and graded by an inspector licensed under this act and the grade by which it is sold, offered for sale, or consigned for sale be one of the grades fixed therefor in the official grain standards of the

United States: Provided, that any person may sell, offer for sale, or consign for sale, ship, or deliver for shipment in interstate or foreign commerce any such grain by sample or by type, or under any name, description, or designation which is not false or misleading; and which name, description, or designation does not include in whole or in part the terms of any official grain standard of the United States."

The remainder of section 4 consists of provisos which are not material in the consideration of the matter before us. Section 5 of said act (U. S. Comp. St. § 8747½d) provides that no person, except as permitted in the provisos to said section 4, shall represent that any grain shipped or delivered for shipment in interstate or foreign commerce is of a grade fixed in the official grain standards other than as shown by a certificate therefore issued in compliance with said act. Section 7 of said act (U. S. Comp. St. § 8747½f) is in part as follows:

"The Secretary of Agriculture may issue a license to any person, upon presentation to him of satisfactory evidence that such person is competent, to inspect and grade grain and to certificate the grade thereof for shipment or delivery for shipment in interstate or foreign commerce, under this act and the rules and regulations prescribed thereunder. No person authorized or employed by any state, county, city, town, board of trade, chamber of commerce, corporation, society, partnership, or association to inspect or grade grain shall certify, or otherwise state or indicate in writing, that any grain for shipment or delivery for shipment in interstate or foreign commerce, which has been inspected or graded by him, or by any person acting under his authority, is of one of the grades of the official grain standards of the United States, unless he holds an unsuspended and unrevoked license issued by the Secretary of Agriculture: Provided, that in any state which has, or which may hereafter have a state grain inspection department established by the laws of such state, the Secretary of Agriculture shall issue licenses to the persons duly authorized and employed to inspect and grade grain under the laws of such state. * * * The Secretary of Agriculture shall require every inspector licensed under this act to keep complete and correct records of all grain graded and inspected by him."

Said act further provides that any person knowingly violating any of the provisions of section 4 or section 7 thereof, or any inspector licensed thereunder who shall knowingly inspect and grade improperly any grain which has been shipped or delivered for shipment in interstate or foreign commerce, or shall knowingly give any false certificate of grade, shall be guilty of a misdemeanor, and upon conviction shall be subject to fine not exceeding $1,000 and imprisonment not exceeding one year.

The apparent purpose of said act is to require the inspection and grading of grain for shipment in interstate commerce according to uniform standards prescribed by federal authority, and by an inspector appointed under the provisions of said act whenever any such inspector shall be located at the place of shipment. The act is too long to quote in full, but the same when considered as a whole seems clearly designed to facilitate the sale and shipment of grain by securing uniformity and accuracy in grading, and to protect both buyer and seller from fraud or imposition.

[10] The contract of sale and shipment in this case involved interstate commerce. Miller v. Goodman, 91 Tex. 41, 44, 40 S. W. 718; Gale Mfg. Co. v. Finkelstein, 22 Tex. Civ. App. 241, 54 S. W. 619; Dahl Implement & Lumber Co. v. Campbell, 45 N. D. 239, 178 N. W. 197, 200; Dozier v. State, 218 U. S. 124, 30 Sup. Ct. 649, 54 L. Ed. 965, 28 L. R. A. (N. S.) 264.

Appellant contends that a proper construction of the contract of sale in this case makes the grade of said wheat as determined and declared by inspector Swearingen conclusive on the parties thereto, in the absence of allegation and proof of fraud or gross mistake equivalent thereto.

The court is of the opinion that said contract should be construed in the light of the provisions of said act of Congress. It is shown that the inspector Swearingen inspected the grain under consideration in this case and graded it as No. 2 red wheat according to the official grain standards of the United States. Such standards therefore declared the quality and condition of wheat requisite to permit it to be so classed. Under the provisions of said act, appellants were prohibited by law, under penalties as hereinbefore shown, from shipping or delivering for shipment in interstate commerce any grain purporting to be No. 2 red wheat unless the same had been inspected and graded as such by an inspector licensed under the terms thereof. Appellant was also prohibited under the provisions of said act from representing that the grain so shipped or delivered for shipment was No. 2 red wheat, such being a grade fixed in said official grain standards, without a certificate to such fact, issued in compliance with the terms of said act. The majority of the members of this court are therefore of the opinion that appellant's contention as to a proper construction of the contract under consideration in this case is correct.

Sections 5 and 6 of said act of Congress (U. S. Comp. St. §§ 8747½d, 8747½e) provide for certain procedure in the case of mistake or fraud in grading by official inspectors. We do not think, however, that the procedure so provided was intended to be exclusive or to deny a party injured by false or fraudulent classification or grading by such a federal inspector redress under the ordinary rules of law. Such rules are stated in 23 R. C. L. p. 1363, § 185, as follows:

"Frequently executory contracts of sale provide for the determination by some third person of the question whether the article or commodity tendered by the seller is of the quality required by the contract, and in such a case the decision of such third person honestly made is held final and conclusive on the parties. Thus where a commodity such as wheat, corn or the like is sold in the market according to grades of universal trade recognition, and a contract for the sale of such a commodity of a particular grade stipulates that the grading of the commodity by a third person shall be final, the honest grading of the commodity by such third person must be accepted by the parties as final. On the other hand, the decision of such third person is not binding on the parties if not honestly made, and proof of gross inferiority of the goods passed by such third person as conforming to the contract is admissible because such proof tends to show that he did not exercise his honest judgment. Nevertheless the issue always remains the same, viz.: Did the third person exercise his honest judgment? not whether the jury or the witnesses would have come to a different conclusion in the exercise of their judgment. To give the decision of the person selected by the parties less force would be to deny the right of the parties to contract."

Other authorities ameliorate the stringency of the rule so declared so as to grant relief in case of a mistake on the part of the inspector so gross as to be equivalent to fraud. Herman H. Hettler Lumber Co. v. Olds, 137 C. C. A. 336, 221 Fed. 612, 615, 616. See, also, Gorham v. Dallas C. & S. W. Ry. Co. (Tex. Civ. App.) 106 S. W. 930, 933; Lanier & Co. v. Little Rock Cooperage Co., 88 Ark. 557, 115 S. W. 401; Nofsinger v. Ring, 71 Mo. 149, 36 Am. Rep. 456; Brooke v. Laurens Milling Co., 78 S. C. 200, 58 S. E. 806, 125 Am. St. Rep. 780, same case on subsequent appeal, 84 S. C. 299, 66 S. E. 294; California Sugar & White Pine Agency v. Penoyar, 167 Cal. 274, 139 Pac. 671; Canton Lumber Co. v. Liller, 107 Md. 146, 68 Atl. 500.

Appellant proved by the United States licensed grain inspector in Kansas City that he as an official did grade said grain so shipped and that the same was No. 2 red wheat, and appellant introduced in evidence a certificate therefor, issued under the provisions of said act. Appellant contends that such evidence showed a compliance with the terms of its contract and entitled it to the benefit of the provisions of the same making Kansas City official grades conclusive. Appellee failed to allege that such grading was fraudulent or the result of gross mistake. In the absence of such allegations and a favorable finding thereon, appellee was not entitled to judgment against appellant in this case. The majority of the court are of the opinion that appellees' motion for rehear-

ing should be overruled; and it is so ordered.

BARCUS, J. (dissenting). I regret to differ with my associates. In my opinion, the motion for rehearing should be granted and the judgment of the trial court affirmed, for the reason that under the terms of the contract appellant was to deliver to the railway company at Kansas City for appellee, Blum Milling Company, 1,000 bushels of No. 2 red wheat on (or according to) Kansas City official weights and Kansas City official grades, and the jury found that the wheat actually delivered by appellant to the railway company at Kansas City was not No. 2 red wheat at Kansas City according to Kansas City official weights and Kansas City official grades, and the evidence was sufficient to support said finding. I do not believe the contract as drawn by appellant and accepted by appellee should be construed to mean that appellee would be bound by a grade as made by a United States grain inspector in Kansas City. Appellant did not allege that the United States Grain Standards Act was the same as the Kansas City official grade, and did not allege that Kansas City or Missouri did or did not have a statute fixing the standard or official grades of wheat. The testimony of the Missouri state weigher is that he weighed the wheat according to the official standard as fixed by the state of Missouri. The grader, Mr. Swearingen, stated that he graded it according to the standard as fixed by the United States government. We have in Texas a standard of official weights as same relate to grain and official grades and measures as relate to all kinds of fruits and vegetables. A standard bushel of wheat must weight 60 pounds. The weigher's certificate introduced in evidence shows wheat in controversy only tested 58 pounds. Articles 7846bbb–7846¼zzz, Vernon's Ann. Civ. St. Supp. 1922, and articles 990–993 of the Criminal Statutes (Pen. Code).

The parties to the contract were to sell and accept No. 2 red wheat based on or governed by the official grades as established in Kansas City, but as to whether the wheat actually delivered was No. 2 wheat based on the Kansas City official grades and weights was a matter of proof to be established by competent testimony under the rules of evidence laid down for trial of issues in our court. The grades and weights made by officials in Kansas City and evidence by other parties that were competent to testify as to the grade of wheat was introduced in evidence, and the jury found that the wheat was not No. 2 red wheat according to the Kansas City official grades and weights, as required under the contract.