[L. A. No. 2541. Department One.—August 31, 1910.]

# FAIRCHILD-GILMORE-WILTON COMPANY, Respondent, v. SOUTHERN REFINING COMPANY, Appellant.

ACTION FOR DAMAGES—BREACH OF TWO CONTRACTS TREATED AS ONE—STATEMENT IN ONE COUNT—ERROR NOT PREJUDICIAL.—In an action for damages for breach of two independent contracts for the sale of four thousand tons of asphalt, each bearing different dates, the fact that both were included in one count of the complaint is not a prejudicial error requiring reversal, where the evidence shows that in fact both parties, after making the second contract, treated the two as one, in all their dealings with each other, .without distinguishing them in any way by reference to them as different contracts, and that the defendant was not prejudiced in any way by the method of pleading, but the conduct of the parties was such that if the pleading were separate, the cause must have been tried and the evidence introduced upon both together.

ID.—PURCHASE OF ASPHALT IN MARKET—PLEADING—UNCERTAINTY AS TO MODE OF PACKING CURED BY FINDING.—An uncertainty in the complaint as to the mode of the packing of asphalt purchased in the open market to supply a deficiency in delivery, as to whether they were in double-headed or single-headed packages, when they should have been in single-headed packages to cover the amount claimed, is cured by a finding supported by uncontradicted evidence that the purchase was all in single-headed packages.

ID.—CONSTRUCTION OF CONTRACTS—MAXIMUM DELIVERY PER MONTH—DATE OF MONTHLY PAYMENT—CALENDAR MONTH.—As each contract provided for a maximum delivery per month of four hundred tons of asphalt, and fixed the tenth day of each month for payment of all the asphalt delivered during the preceding month, evidently both of these kindred provisions refer to the months of the calendar. The defendant was not obliged to deliver more in any month than was demanded, unless it was delinquent for a preceding month.

ID.—FINDINGS AS TO AMOUNT OF DELINQUENCY PARTIALLY UNSUPPORTED.—It is held that the .findings as to the amount of delinquency were unsupported to the extent of $1,557.79, which would render. the judgment for $19,463.56 that much less, so as to amount only to $17,905.77, and necessitate a new trial.

ID.—EVIDENCE—LETTER OF DEFENDANT OFFERING TO SELL ASPHALT AT FIXED VALUE PER TON.—A letter of the defendant after assuming to rescind the contracts, offering to sell asphalt to plaintiff at fifteen .dollars per ton on January 14, 1907, was competent as an admission of the defendant tending to show the value of asphalt at that time.

ID.—AMOUNT PAID BY PLAINTIFF IN OPEN MARKET NOT MATERIAL TO RECOVERY—MEASURE OF DAMAGES.—Evidence of the price paid by

plaintiff in the open market to supply a deficiency of delivery was not material to plaintiff's recovery. Upon non-delivery of the asphalt agreed to be delivered, the measure of damages was the excess over the contract price of the market value of the asphalt in the nearest market at such time after the breach as would enable the plaintiff by reasonable diligence to buy an equivalent amount. This plaintiff could recover, whether it actually bought an equivalent quantity or not, and regardless of the price it paid for what it did buy.

ID.—EVIDENCE OF MARKET VALUE.—Evidence of the amount paid for particular sales is not competent as evidence of value, unless the defendant had sought to show that plaintiff had succeeded in replacing the asphalt at less than the market value.

ID.—CROSS-EXAMINATION OF WITNESS AS TO MARKET VALUE.—A witness who had testified as to the market value of asphalt may be asked on cross-examination as to the profit he would make per ton at the price he had testified to be the market rate.

ID.—INEFFECTUAL RESCISSION—RECOVERY BY PLAINTIFF NOT BARRED.— Where it appears that plaintiff made part payments on the price at each monthly period and had been granted further time to make payments, the defendant, who was in default on the delivery of asphalt ordered to the extent of one thousand tons, could not rescind the contract; and an attempt by him to rescind the same for plaintiff's failure to make full payment, was ineffectual, and where plaintiff made full payment thereafter his right to recover damages for defendant's breach of the contract to deliver asphalt was not barred under the circumstances.

ID.—RIGHT OF RESCISSION CONFINED TO PERSON WITHOUT DEFAULT.— The rule is general that the right to rescind a contract rests only with the party who is without default. One party cannot violate the contract himself, and then seek a rescission on the ground that the other party has followed his example.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. Curtis D. Wilbur, Judge.

The facts are stated in the opinion of the court.

McNutt & Hannon, Byron M. Marble, and J. W. McKinley, for Appellant.

Gibson, Trask, Dunn & Crutcher, Edward E. Bacon, and Henry M. Young, for Respondent.

SHAW, J.—This is an action by plaintiff, a buyer of certain asphalt, to recover of the defendant, the seller thereof,

damages for the alleged failure of the seller to deliver the asphalt as the contract provided. Plaintiff obtained judgment for $19,463.56. The defendant appeals from the judgment and from an order denying its motion for a new trial.

There were two contracts for the sale of asphalt. Both were made in the form of a written proposal by the defendant to sell and a written acceptance thereof by the plaintiff. The first was made on January 3, 1906, as follows:—

"Referring to conversation had at your office some several days since with reference to furnishing you with 4000 tons asphalt, 'D' and 'DX' grades, we beg to submit herewith proposal covering same as follows:

"We propose to furnish you with 4000 tons asphalt, grades 'D' and 'DX,' our make, at $7.00 per ton, gross weight, f. o. b. our refinery when packed in single-headed packages, and $7.50 per similar ton when packed in double-headed packages.

"Said amount of asphalt, viz.: 4000 tons to be taken within one year from January 1st, 1906.

"Deliveries to be made as rapidly as possible, provided, however, not more than 400 tons is ordered or called for in any one month.

"Payments for said asphalt to be made on the 10th day of each month for all material delivered during the preceding month.

"This proposal to be subject, however, to strikes, fires and other causes beyond our control."

The second contract was made on May 16, 1906. It is identical in language with the first, excepting: 1. The date, which is May 16, 1906; 2. The time within which the asphalt was to be taken, which is "one year from May 16th, 1906," instead of one year from January 1, 1906, as in the first contract, and, 3. That, immediately preceding the last clause, the following clause was inserted:

"This in addition to amount agreed to furnish you January 3, 1906."

The complaint consisted of but one count. It alleged the delivery of 5005.615 tons of asphalt, under both contracts, prior to January 26, 1907, the demand by plaintiff of the defendant and the refusal of defendant to deliver the remaining 2,994.385 tons called for thereby, that, by reason of such failure, plaintiff was compelled to and did buy 2,994.385

tons of asphalt of equal quality, in open market at current market rates, and to pay therefor at the rate of fifteen dollars per ton, whereby plaintiff was damaged in the sum of $23,955.08. The finding of the court was that the plaintiff paid $13.50 for the asphalt bought to supply the deficiency and that it was damaged to the amount of $19,463.56 by the defendant's failure to deliver.

1. The first point urged by appellant is that the two contracts were separate and independent, that the breach of each would be a cause of action, irrespective of the other, and, hence, that the complaint avers two causes of action which are not separately stated. This objection is now made a ground of demurrer. (Code Civ. Proc., sec. 430.) It is one of the grounds of the demurrer to the complaint, which was overruled in the court below. It may be admitted that the contracts were independent, that the last was not a mere supplement to or alteration of the first and that two causes of action are alleged. It is evident that this method of stating the plaintiff's case did not prevent the defendant from presenting its defense, or its case, to the court as fully and effectively as it could have done if each contract had been pleaded separately as the foundation of a distinct cause of action. It appears from the evidence that in fact both parties, after the making of the second contract, treated the two as one, kept no separate account of either and that the orders were given and the deliveries and payments made, without distinguishing them in any way by any reference to there being different contracts. The terms of the two were identical, except as to dates. The method of pleading did not prejudice the defendant. Even if each had been made the subject of a separate count, the conduct of the parties in their performance was such that the cause must have been tried and the evidence introduced upon both together. This error, of itself, would not justify a reversal of the judgment.

2. The complaint is uncertain, in that it does not state whether the asphalt which it alleges the plaintiff had to buy because of the failure of the defendant to deliver the amount contracted for, was packed in single-headed packages or in double-headed packages. This made it impossible to determine whether the measure of damages, that is, the difference

between the value of the asphalt to the plaintiff and the contract price was $7.50 per ton, or eight dollars per ton. To make the total amount claimed it should have been in single-headed packages, as that would have made a difference of eight dollars per ton. This defect, however, is cured by the finding that it was, in fact, all in single-headed packages, which was in accord with the uncontradicted evidence.

3. The most serious question in the case is the sufficiency of the evidence to sustain certain findings. In order to determine this question intelligently it is necessary first to consider the effect of the contracts and the obligations imposed on the defendant thereby. Each contract was for the sale of four thousand tons of asphalt to be taken within a year from its date, and delivered as rapidly as possible, but not more than four hundred tons were to be ordered "in any one month." We think the proper construction of the contract of May 16th is that by the "one month," therein referred to, a calendar month was intended and understood. This is shown by the clause immediately following, to the effect that payments were to be made on the tenth of each month for all the asphalt delivered during the preceding month. Evidently both of these kindred provisions refer to the months of the calendar. They were so treated in the subsequent dealings. Each contract called for but four thousand tons and if the full complement of four hundred tons each month had been called for and delivered each contract would have been performed within ten months from its date. The defendant was not obliged to deliver more in any month than was demanded, unless it was delinquent for some previous month. We need not inquire whether or not, where the full amount for one month was ordered and the defendant failed to deliver it all, it was obliged, during the next or any succeeding month, in the life of the contract or afterward, to deliver more than four hundred tons a month in making up the delinquency. As we understand the facts, this question does not arise.

It appears, however, from the admissions at the trial and the findings, that the total amount delivered up to November 1, 1906, was only 4,360.339 tons. During that period, the maximum quantities that could have been ordered, under the contracts, were four hundred tons each month from Jan-

uary to April, inclusive, six hundred tons for May, and eight hundred tons each month from June to October, inclusive; a total of sixty-two hundred tons. If the maximum had been ordered during each of these months, the deficit of 1,839.661 tons would have remained due, and defendant would have been obliged to deliver the same subsequently, either in such quantities as were demanded, or the life of the contracts would be extended by operation of law, if plaintiff insisted, until the full complement of eight thousand tons had been delivered at four hundred tons per month. But if all that was demanded during those months was then delivered, the defendant was not in default on November 1, 1906, and during the remainder of the terms of the contracts it .was not under obligation to deliver more in any month than the respective contracts called for during the years specified therein, that is, eight hundred tons for November and December, four hundred tons per month thereafter to May 1, and two hundred tons for the half of May, making thirty-four hundred tons in all. The 4,360.339 tons delivered up to November 1, 1906, left 3,639.661 tons yet to deliver of the eight thousand tons contracted for. This was more by 239.661 tons than could be ordered during the continuance of the respective contracts, at the limited rate stipulated therein. Each contract expired at the end of the year specified therein, and thereafter the defendant was under no obligation to deliver any part of the total quantity contracted for therein, unless it was delinquent for failure to deliver the quantities rightfully ordered while the contract was in force.

It thus appears that the question whether or not the defendant was delinquent in the delivery of asphalt ordered prior to November 1, 1906, is important and material in determining the amount of its liability for damages. The finding was that the defendant delivered 5,005.615 tons and failed and refused to deliver the 2,994.385 tons necessary to make the eight thousand tons contracted for, and that the plaintiff was compelled to buy the amount of the deficiency at $13.50 per ton, in single-headed packages, which was $6.50 a ton in excess of the contract price, and a damage to the plaintiff in that sum per ton, the total damage for 2,994.385 tons at $6.50 a ton being $19,463.56, for which amount the judgment was given. As a basis for this the court also

found that "during the months of the year 1906, in which said contracts were in force," the plaintiff demanded "at divers times during each of said months, the asphalt agreed to be furnished plaintiff under said contracts, stating the quality and amount required by plaintiff." It also found that like demands were made during the life of the second contract in 1907, coupled with a demand for the preceding deficits. It is contended that these findings are not sustained by the evidence.

The evidence as to demands during 1907, and as to the months of November and December, 1906, is sufficient to justify the findings as to those months. As to the months preceding November the finding is contrary to the express stipulation of the plaintiff at the trial. There was no dispute about the amount delivered up to November 1, 1906. It was admitted to be 4,360.339 tons, as above stated. The exact quantity for each month was stated in a writing admitted to be correct. During the trial the plaintiff offered to amend paragraph V of the complaint. The defendant objected that it would change the issues. Counsel for plaintiff then said that "for the purpose of avoiding any trouble over allegations of failure of defendant to comply with the demands prior to November 1, 1906, plaintiff was willing to stipulate that the defendant practically complied with the terms of the contract up to that date, and that it would not seek to show any shortage for the months preceding November 1, 1906." The court said: "The proposition is that any judgment should be for defaults after the first of November, 1906." This was agreed to, and thereupon the amendment to the complaint was allowed. The evidence was all directed to demands made after November first. It follows that the finding that demands were made in each month prior to November, 1906, for the full amount of four hundred tons for each of those months, was unwarranted. The defendant was not shown to be in default on November 1, 1906.

The court finds, and it was admitted, that after October 31, 1906, defendant delivered 645.276 tons. As only thirty-four hundred tons could have been lawfully demanded by plaintiff after that date, in the absence of prior delinquencies of defendant, it follows that the defendant was liable for a failure to deliver to the extent of 2,754.724 tons and no more.

The delinquency charged in the findings and computed in the judgment was 2,994.385 tons. This was 239.661 tons more than defendant was liable for under the facts stipulated. This excess, at the rate of $6.50 per ton, would amount to $1,557.79. The judgment should have been that much less, or $17,905.77, instead of $19,463.56.

For the same reasons it is obvious that the clause in finding IV, that "the defendant was, during all of the months under said contracts, subsequent to May, 1906, constantly in arrears in furnishing the asphalt required by plaintiff," is also contrary to the evidence. It is not necessary to consider the other assignments as to insufficiency of the evidence.

4. A number of rulings on the admission and exclusion of evidence are assigned as error. In view of the necessity of a new trial it is proper to consider some of them. The letter of defendant to plaintiff dated January 14, 1907, offering to sell asphalt at fifteen dollars per ton was properly admitted. It was competent as an admission of the defendant tending to show the value of asphalt at that time. Evidence of plaintiff's purchases of asphalt at fifteen dollars a ton, in the open market, during the time the defendant was failing to fill plaintiff's orders, was immaterial. The fact was alleged and denied, but the allegation was not essential to plaintiff's right to recover. Upon the defendant's breach of the contract to sell and deliver the asphalt, plaintiff was entitled to damages. The measure of damages was the excess over the contract price of the market value of the asphalt in the nearest market, at such time after the breach as would enable the plaintiff by reasonable diligence to buy an equivalent amount. (Civ. Code, secs. 3308, 3354.) This it could recover whether it actually bought an equivalent quantity or not, and regardless of the price it paid for what it did buy. Evidence of the price paid for particular sales is not competent as evidence of value. The proof might have been admissible if the defendant had sought to show that plaintiff had succeeded in replacing the asphalt at less than the market value. But no such attempt was made. The question put to the witness Jones as to the profit he would make per ton at the price he had testified to be the market rate should have been allowed. It was proper cross-examination concerning his testimony as to the market value. Other like questions in

cross- examination of other witnesses to value should have been permitted.

5. The last point for consideration is the claim of the defendant that it rescinded the second contract in January, 1907, and that the plaintiff cannot recover on either contract because it was in default in the payments for asphalt actually received. The contracts provided that on the tenth of each calendar month the plaintiff would pay the full price of all asphalt delivered to it during the preceding month. The plaintiff never did pay the full amount due in any month and on January 10, 1907, it owed the defendant $6442.21 on account, the greater part of which was for asphalt previously delivered on the two contracts. Some sharp correspondence ensued between them in regard to the matter. On January 25th the defendant wrote plaintiff a letter, in which, after referring to the plaintiff's failure to accept a proposal for a new contract for another year at a higher price, it said: "We consider the matter a closed incident, and would at this time remind you that as you have, also, failed to keep your part of the agreement already supposed to be existing between us, we will, also, call this matter off. It only remains for you to settle your indebtedness to us after which our relations will be . determined by the future." The defendant itself was at that time in default for failure to deliver asphalt ordered by plaintiff during the months of November and December, 1907, the amount of its delinquency being at least one thousand tons. It appears from the evidence, and the court finds, that the plaintiff was in default in payments at each monthly pay-day during the life of the contracts up to that time, but there is no evidence that it ever refused to pay. At each demand for payment the plaintiff had made partial payment of the sum due and had asked, and had been granted, indulgence in the time to pay the balance. To the letter of January 25th, the plaintiff answered on January 26th, by a statement that it was withholding payment as security for the damages it had suffered up to that time by the failure of the defendant to deliver the asphalt previously ordered. On January 28th the defendant, by letter, repudiated any liability for non-delivery and reiterated its refusal to deliver more. On January 29th, the plaintiff disavowed its position assumed in its previous letter, and declared its willingness to pay in full for the asphalt

delivered, remitting six thousand one hundred and fifty dollars as a payment in full of the account as shown on its own books, and offering to pay any further amount, if the defendant's books showed a greater amount due, and again demanded the asphalt then deliverable under the two contracts. The entire balance was paid shortly afterwards. At the time the defendant declared, or attempted to declare, the rescission of the contracts, there had been a complete waiver by it of all right to rescind for delinquencies in payment prior to January 10, 1907, and the entire course of business indicated that it did not intend to insist on payment promptly on the day fixed. It was itself in arrears in delivery as above stated, and at the going price of asphalt as found by the court, $13.50 per ton, the plaintiff was entitled to damage, for the non-delivery for the last two months of 1907, in at least the sum of six thousand five hundred dollars, which was more than the payments then due for the asphalt delivered, at the contract price. The defendant was therefore in default as fully as the plaintiff. Under all these circumstances, we think the court below was justified in its conclusion upon the facts found, that there was no effectual rescission of the contract as to the remaining months of the last contract, and that plaintiff's failure to pay did not bar its recovery. "The rule is general that the right to rescind a contract rests only with the party who is without default. One party cannot violate the contract himself, and then seek a rescission on the ground that the other party has followed his example." (*State* v. *McCauley,* 15 Cal. 458; 2 Chitty on Contracts (11 Am. ed.) 1092; 2 Parsons on Contracts (9th ed. *p.) 679.)

We have assumed, for the purposes of the discussion on this point, that the seller of a stated quantity of goods, to be delivered in installments which are to be paid for at fixed times, on or after delivery, has the right to rescind the contract upon an unexcused and unwaived failure of the buyer to pay an installment when due. In view of the fact that a new trial may be had and that the evidence may be different on such trial, we do not think it advisable to lay down this rule as the law of the case. In the course of the long litigation in the cases of *Cox* v. *McLaughlin* and the *Western Pacific Railroad Co.* (44 Cal. 18; 47 Cal. 87, 52 Cal. 590; 54 Cal. 605; 63 Cal. 196; 76 Cal. 60, [9 Am. St. Rep. 164, 18 Pac. 100]), it

was decided that, under the provisions of the contract there involved, the non-payment of the installments of the contract price by McLaughlin as they fell due, authorized Cox to rescind and sue on a *quantum meruit* for the value of the work done. That was a building contract. It is generally the case that progress payments upon such contracts are provided so that the contractor may have funds wherewith to proceed with the subsequent work to be performed. It seems to be established in this state that in the case of building contracts, in the absence of special conditions or circumstances demanding a different rule, the rule above given is applicable. (*Porter* v. *Arrowhead Co.*, 100 Cal. 503, [35 Pac. 146]; *Golden Gate L. Co.* v. *Sahrbacher*, 105 Cal. 116, [38 Pac. 635]; *San Francisco Bridge Co.* v. *Dumbarton*, 119 Cal. 275, [51 Pac. 335].) The same considerations do not so uniformly apply to a failure to make payments upon contracts for the sale of goods by installments wherein the price for the goods delivered is to be paid in full, as delivered, or at fixed dates after each delivery. There are no decisions on the precise point in this state. In other jurisdictions there is a conflict of authority on the question whether a mere failure to pay an installment at maturity, not amounting to a refusal to pay and not intended by the buyer as a repudiation or renunciation of the contract, nor understood to be such by the seller, will authorize a rescission by the seller. (5 Benjamin on Sales, notes to secs. 560-609, p. 604; 2 Mechem on Sales, secs. 1140 to 1148 and notes.) We prefer to leave the question open for further consideration hereafter, if it should arise.

The judgment and order are reversed and the cause remanded for a new trial.

Angellotti, J., and Sloss, J., concurred.

Hearing in Bank denied.