[Civ. No. 16367. First Dist., Div. One. Aug. 15, 1955.]

WILLIAM N. BUSH, Appellant, v. PAUL VERNON et al., Respondents.

William H. Penaat for Appellant.

Donovan, Stuhr & Martin and Laurence M. Donovan for Respondents.

PETERS, P. J.—By the first cause of action in his amended complaint, plaintiff, William N. Bush, charged defendant Paul Vernon and his mother, Ethel Vernon, with breach of a contract to purchase a sublease for $5,000, and in a second cause of action charged the failure to pay $1,500 in rent. Judgment was entered in favor of defendants and plaintiff appeals.

The case is primarily a factual one. Plaintiff owned a leasehold interest in a hotel in San Francisco. Ethel Vernon desired to purchase that interest. In September of 1952 her son Paul, on her behalf, began to negotiate with plaintiff for such purpose. These negotiations resulted in a written agreement signed by plaintiff, and by Paul as the representative of his mother, for the sale of the leasehold interest for $5,000. The purchase price was to be paid through an order of Paul Vernon on funds held by the Kern County Title Company for Mrs. Vernon. This contract was undated, but required that the $5,000 be paid before October 17, 1952, and also provided that Mrs. Vernon could take possession October 1, 1952. It expressly stated that the "Deal subject to approval of Lessor."

Paul Vernon executed an order on the title company on September 30, 1952, and delivered it to plaintiff. When plaintiff presented it for collection on October 9, 1952, it was returned to him unpaid because Mrs. Vernon had rescinded it. Paul testified that the order was rescinded because the attorney for the lessor refused on behalf of the lessor to consent to the assignment unless Mrs. Vernon deposited $3,000 as security, which she was not willing to do. The attorney, who had full authority to act for the lessor, suggested a sublease instead of an assignment. Thereafter, this attorney drafted a sublease, dated October 31, 1952, which contains the signa-

ture of plaintiff as lessor, and the signatures of both defendants as sublessees. As part of this transaction the attorney for the lessor drafted a consent to the sublease, to be delivered to the parties in the event that plaintiff deposited with the attorney $1,500 in cash as security for the original lease. This $1,500 was never deposited with the attorney, so that this consent to the sublease was never delivered.

Plaintiff admitted that this sublease was intended as a substitute for the originally contemplated assignment, and that the parties mutually agreed to abandon the assignment transaction.

The sublease provided that Mrs. Vernon was to take possession November 1, 1952. She actually took possession on November 4, 1952. In October or November, 1952, an "Escrow Agreement and Agreement of Sale" was prepared, bearing a date of "————November, 1952," by and between Ethel Vernon and plaintiff, and a named escrow holder, whereby plaintiff agreed to sell the leasehold to Mrs. Vernon for $3,500 payable by an order on the Kern County Title Company. Whether this agreement was signed or delivered by Bush, and whether it was signed by the escrow holder, are facts in dispute. The escrow holder was to prepare a "Notice of Intended Sale," and record and publish it. The escrow holder was to pay the claims of the creditors of plaintiff. The plaintiff, however, testified that this was intended to be a cash transaction; that he did not proceed to go through escrow; that he did not contact the escrow holder, although, admittedly, part of the proceeds of the escrow were to furnish the $1,500 security necessary to secure the consent of the lessor to the sublease.

Plaintiff admitted that there were "approximately a couple of thousand dollars" in outstanding bills against the hotel, and that in a prior transaction with the defendants involving a hotel lease, claims for unpaid bills exceeded the proceeds from the sale by a substantial amount. Plaintiff also admitted that he told the broker in the transaction: "I can't sign that agreement, I can't have an escrow in that deal, $3500 wouldn't be a drop in the bucket against the claims filed." In a deposition plaintiff admitted that he had "refused to some extent" to go through escrow, and at the trial conceded that he had never got in touch with the escrow holder, nor deposited any papers with him. He conceded that he reduced the price from $5,000 to $3,500 because he needed money badly to pay his creditors.

Paul Vernon testified that he deposited the $3,500 order with the escrow holder, but that plaintiff never signed or delivered a copy of the escrow agreement.

On December 9, 1952, Mrs. Vernon quit the premises because the consent to the sublease had not been received and she felt, quite properly, that she was in possession illegally. Mrs. Vernon paid no rent for the period she was in possession —November 4, 1952, to December 9, 1952—but she did pay some of the outstanding bills. Paul Vernon offered plaintiff $300 as rent, the amount he computed was due after proration, but ''he told me to hang on to it until the whole thing was complete.'' Plaintiff admitted that between November 1 and 4, 1952, he collected $307.81 as rent which he did not turn over to defendants. Plaintiff resumed possession on December 9, 1952, and kept it until January 31, 1953, when he ceased to be the lessee.

Both Paul and Mrs. Vernon testified that Paul at all times was acting solely as agent for Mrs. Vernon, and plaintiff admitted that he had never been told that Paul was to be a partner in the enterprise, or had any interest therein.

On these facts the trial court found a mutual abandonment and rescission of the original assignment of September, 1952, based upon the fact that the lessor refused to consent to such assignment; that Mrs. Vernon took possession in November, 1952, under an oral contract under which plaintiff undertook to secure and deliver a written consent of the lessor to a sublease; that because of the failure to secure and deliver such a written consent, and because of plaintiff's refusal to perform the terms and conditions of the oral agreement, that is, his refusal to consent to the recordation and publication of the intended notice of sale, defendant Ethel Vernon relinquished possession on December 9, 1952, and plaintiff retook possession. The court concluded that Paul acted solely on behalf of his mother in the transactions, that the assignment was mutually rescinded, and the sublease was of no effect. Based on these findings and conclusions judgment was entered for defendants.

There can be no doubt that the finding that the original agreement for the sale of the lease and providing for its assignment was abandoned and mutually rescinded because the lessor refused to consent to such assignment, is amply supported by the evidence. In fact, appellant admitted that this was true. ▇ Of course, an executory written bilateral contract may be rescinded by mutual consent of the parties.

Such consent need not be in writing but may be oral or may be manifested by conduct. (*Treadwell* v. *Nickel*, 194 Cal. 243 [228 P. 25] ; *San Roque Properties, Inc.* v. *Pierce*, 18 Cal.App. 2d 379 [63 P.2d 1198].) Moreover, the assignment of the lease expressly provided "Deal subject to approval of Lessor." The evidence demonstrates that this condition precedent was not performed, so that the agreement never became effective. Thus, there can be no doubt that the cancellation of the order on the escrow holder for the $5,000 was legally justified.

The present action is not predicated upon the assignment but upon the October 31, 1952, sublease. The legal effect of this document must be considered together with the "Escrow Agreement and Agreement of Sale," which was never properly executed.

The trial court found that Ethel Vernon took possession of the hotel under an oral agreement, and that under this oral agreement appellant was to obtain the written consent of the lessor to the sublease, and was to consent to recordation and publication of a notice of sale ; that because of the nonperformance of these conditions Mrs. Vernon relinquished possession of the property.

These findings, in substance, are to the legal effect that there was a mutual rescission of the sublease and a parol agreement prior to possession, the terms of which were embodied in the unexecuted "Escrow Agreement and Agreement of Sale." There is ample evidence to support a finding that the sublease was orally rescinded. Appellant admitted that this agreement in November, 1952, was terminated and abandoned by mutual consent, and was cancelled out by the agreement reducing the price to $3,500. ■ While it is true that a contract in writing may be altered only by a contract in writing or by an executed oral agreement (Civ. Code, § 1698), and while it is also true that here we do not have an executed oral agreement that would constitute an effective modification of the sublease, it is equally true that an oral novation may extinguish a written agreement. (*Pearsall* v. *Henry*, 153 Cal. 314 [95 P. 154, 159] ; *Klein Norton Co.* v. *Cohen*, 107 Cal.App. 325 [290 P. 613] ; *Producers Fruit Co.* v. *Goddard*, 75 Cal.App. 737 [243 P. 686].) ■ The required consideration for the novation is present when the contract is partially executory on both sides, for in mutually cancelling the executory contractual rights, each party has suffered a legal detriment. (*Sass* v. *Hank*, 108 Cal.App.2d 207 [238 P.2d 652] ; *King* v. *Gerold*, 109 Cal.App.2d 316 [240 P.2d 710].) Since Mrs.

Vernon, according to the supported finding, went into possession under the oral agreement, the terms of which were set forth in the "Escrow Agreement and Agreement of Sale," the sublease obviously was executory when it was rescinded and the oral arrangement substituted. The oral agreement had materially different terms from those in the sublease. The sublease did not require any lump sum payment, but only provided for a rental of $500 a month. The oral agreement, on the other hand, provided for a purchase price of $3,500.

In apparent realization that these principles are decisive, if supported by the record, appellant argues that the sublease was a mere modification of the original sale and assignment of the leasehold, and that this original assignment provided for a purchase price of $5,000, which was automatically carried over as an implied obligation of the sublease agreement. Therefore, so it is argued, the promise to pay $3,500 provided in the oral agreement (embodied in the unexecuted "Escrow Agreement and Agreement of Sale") merely constituted a promise to pay less than defendants were already obligated to pay, and could not constitute a lawful consideration. The difficulty with this argument is that it is contrary to the facts as found by the trial court, which facts are amply supported by the record. As already pointed out, the trial court found that the original agreement for the sale of the leasehold had been abandoned and rescinded. This means that all obligations under it, including the obligation to pay $5,000, were terminated. The evidence to support this finding is overwhelming. This being so, and the evidence supporting the findings that Mrs. Vernon took possession under an oral agreement, the terms of which were embodied in the unexecuted escrow agreement, the agreement to pay $3,500 found in that agreement was consideration for the novation or substitution of the oral agreement for the sublease.

It is equally clear that respondents had the legal right to rescind the oral agreement. Appellant clearly failed to perform his obligations under that agreement. He refused to proceed through the escrow, failed to perform the obligations required of him by the terms of the oral agreement, and failed to secure the required consent of the lessor to the sublease. Appellant argues that, because Mrs. Vernon took possession without the consent of the lessor, she waived this provision of the agreement. It is true that by taking possession she waived the securing of the consent as a condition precedent, but it approaches absurdity to argue that by taking posses-

sion she waived absolutely and for all time the securing of the very consent that was essential to the validity of the agreement. She waited until December 9, 1952, to receive the required consent. The agreement necessarily contemplated the delivery into escrow of the consent as a major portion of the consideration she was to receive for her $3,500. There is ample evidence, including an admission of appellant, that the debts owed by appellant exceeded $2,000, so there would not have been $1,500 left out of the $3,500 to give the lessor as security, which sum was required by the lessor as a condition to granting consent to the sublease. When it became apparent that such consent could not be secured, Mrs. Vernon rescinded, as she had a legal right to do.

Appellant next contends that a party in default under a contract cannot rescind for a breach by the other party. (*Fairchild-Gilmore-Wilton Co.* v. *Southern Refining Co.*, 158 Cal. 264 [110 P. 951].) That is an interesting and probably correct statement of the law, but it has no application to the facts of this case. Defendants were not in default. They were required to draw on the Kern County escrow for $3,500 payable to the escrow holder. Paul Vernon testified that he did so.

Appellant next contends that rescission was not available to Mrs. Vernon because she did not restore or offer to restore the reasonable rental value of the premises while she was in possession, or the rents she collected while in possession. Undoubtedly section 1691, subdivision 2, of the Civil Code requires the party seeking to rescind to restore or offer to restore everything of value received by such party. (*Loud* v. *Luse*, 214 Cal. 10 [3 P.2d 542].) Undoubtedly this requires the restoring or offering to restore the value of the use of the property while in possession. (*Heintzsch* v. *LaFrance*, 3 Cal.2d 180 [44 P.2d 358].) But here the evidence shows that Paul Vernon did offer to restore the value of the possession and was told by appellant "to hang on to it until the whole thing was complete."

It is also urged that Paul Vernon is personally liable on the sublease, which he signed. The evidence demonstrates that throughout all of the transactions Paul was acting only as agent for his mother, and that appellant knew this. This was the finding of the trial court, which finding is supported by well nigh overwhelming evidence. Both Paul and his mother testified that Paul acted at all times in a representative capacity. Appellant admitted that he had never been told

that Paul had any interest in the transaction. The original assignment contract was between Bush and Mrs. Vernon, with Mrs. Vernon's signature being affixed ''by'' Paul Vernon. By stipulation it was agreed that the purchase price of the sublease was to come from money owed to Mrs. Vernon and in the' Kern County escrow. The escrow agreement was in Mrs. Vernon's name only and was signed by her and not by Paul Vernon. The only part of the transactions that does not expressly recognize that Paul acted in a representative capacity, is his signature on the sublease as one of the sublessees. Paul explained that he did this for the accommodation of the owner of the premises and not to benefit Bush. The trial court obviously believed this testimony. Quite clearly, at all times appellant knew that Paul was acting in a representative capacity, and looked only to Mrs. Vernon for payment. Under such circumstances the agent is not personally liable. (Civ. Code, § 2343; *La Rosa* v. *Glaze*, 18 Cal. App.2d 354 [63 P.2d 1181]; see discussion and cases collected 2 Cal.Jur.2d 818, § 132.)

The judgment appealed from is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.