[Civ. No. 40602. First Dist., Div. Two. Mar. 22, 1978.]

THE PEOPLE EX REL. DEPARTMENT OF PUBLIC WORKS,
Plaintiff and Respondent, v.
E. A. METCALF et al., Defendants and Appellants.

**COUNSEL**

Haley, Schenone, Birchfield & Smith and Robert Sakai for Defendants and Appellants.

Harry S. Fenton, John P. Horgan, Robert J. DeFea, Robert N. DeJohn and David W. Robison for Plaintiff and Respondent.

**OPINION**

ROUSE, J.—Defendants, E. A. and Geraldine Metcalf, appeal from an order which granted plaintiff's motion to tax defendants' costs, thereby disallowing a substantial portion of the attorney's fees claimed by defendants.

Defendants base their appeal upon an agreed statement. The facts are that on July 20, 1971, plaintiff, State of California, commenced an eminent domain action to take certain real property owned by defendants Metcalf. Defendants were served with the summons and complaint on September 14, 1971, and retained the law firm of Haley, Schenone, Tucker, Birchfield and Smith (hereafter Haley) to represent them in the action. Haley was employed under a contingent fee arrangement whereby that firm was to be paid one-third of the difference between the amount which plaintiff had previously offered to pay for the property and the net amount which defendants recovered in the condemnation action. In the event that the amount of defendants' recovery did not exceed the state's offer, it was agreed that Haley would not be entitled to any attorney's fees.

Haley filed an answer in the condemnation action and represented defendants until November 10, 1975, at which time defendants released Haley as their attorneys and paid the firm $1,000 for work performed prior to that date.

On March 15, 1976, plaintiff filed a notice of abandonment of the condemnation action. Since defendants had not notified plaintiff of the termination of their relationship with Haley, plaintiff served the notice of abandonment of the action upon Haley. Haley then notified defendants that plaintiff was abandoning the action. Haley also advised defendants of their rights and defendants requested that Haley pursue these rights on their behalf.

On April 15, 1976, acting on behalf of defendants, Haley filed a motion for an order setting aside part of the abandonment so that defendants could establish a loss of rental income, allegedly caused by the pendency of the condemnation action.

On April 28, 1976, Haley also filed a motion for leave to file a cross-complaint in inverse condemnation whereby defendants sought compensation for their lost rental income.

Plaintiff opposed both motions, and following a hearing on May 11, 1976, both motions were denied. On May 20, 1976, a judgment dismissing the condemnation action was entered. The judgment provided that defendants should recover their costs of suit.

Thereafter, defendants filed a memorandum of costs and disbursements and sought to recover $2,800 in attorney's fees, consisting of the $1,000 paid to Haley on November 10, 1975, and $1,800 allegedly owed to Haley for services rendered subsequent to that date. Plaintiff responded by filing a motion to tax defendants' costs.

The matter was heard on July 7, 1976, at which time a representative of the Haley firm testified that defendants had paid Haley $1,000 on November 10, 1975, for services rendered as of that date and had discharged Haley as of that date. He further testified that, thereafter, he spent 24.75 hours on the two motions which were heard on May 11, 1976, and 5.17 hours in opposing the motion to tax costs. Plaintiff argued that since the Haley firm, initially, had been employed on a contingent fee basis, defendants were not obligated to pay Haley any sum when the condemnation action was abandoned. Plaintiff also contended that the services rendered by Haley in connection with the two motions heard on May 11, 1976, were not reasonably and necessarily performed in order to protect defendants' interests in the condemnation action, since that action had been previously abandoned by plaintiff and defendants' claim for rental loss was recoverable in a separate action in inverse condemnation. Plaintiff also pointed out that defendants had in fact commenced such an inverse condemnation action against plaintiff.

On July 27, 1976, the court rendered its order granting plaintiff's motion to tax costs, thereby disallowing all of the attorney's fees claimed by defendants with the exception of the sum of $206.67, representing the attorney's fees incurred in opposing plaintiff's motion to tax costs. Defendants have appealed from this order.

■ Defendants first contend that the trial court erred in denying them recovery of the $1,000 which they paid the Haley firm on November 10, 1975. They point out that, in support of their memorandum of costs and disbursements, they filed a declaration by a representative of Haley in which it was averred that prior to November 10, 1975, Haley had reviewed the case with a real estate broker, had prepared an answer on behalf of defendants, had inspected the real property which plaintiff was seeking to condemn, and had reviewed the income and expense records on the property. Defendants assert that plaintiff made no attempt in the trial court to establish that these services were not reasonably worth the sum of $1,000. They point out that former section

1255a, subdivision (c), of the Code of Civil Procedure[1] (now §§ 1235.140, 1268.510, subd. (c), and 1268.610) provided that upon the dismissal of a condemnation action, the defendant is entitled to recover reasonable attorney's fees where such fees were reasonably and necessarily incurred to protect the defendant's interests in preparing for the condemnation trial, during the trial and in any subsequent judicial proceedings in the condemnation action. Defendants contend that the $1,000 which they paid to Haley constituted an attorney's fee reasonably and necessarily incurred to protect their interests in preparing for the condemnation trial. They contend that the trial court was in error when it disallowed recovery of such fee on the ground that it was for services performed pursuant to a contingent fee agreement. Defendants state that, when they paid Haley the $1,000 in consideration of the legal services previously rendered, a novation took place whereby defendants substituted a new obligation for an existing obligation. They argue that "[s]ince the contingent fee contract was thereby extinguished, [plaintiff's] cases dealing with contingent fee contracts and CCP 1255a are not applicable."

Plaintiff has cited three California cases in support of its position. In the first of these decisions, *City of Long Beach* v. *O'Donnell* (1928) 91 Cal.App. 760 [267 P. 585], a condemnation action was dismissed after the plaintiff city abandoned same, and the defendants then sought to recover attorney's fees allegedly incurred in defending the action. The trial court disallowed any recovery of attorney's fees on the ground that defendants' attorneys had been employed on a contingent fee arrangement whereby they were to receive 20 to 30 percent of the value of the property when it was condemned. The appellate court affirmed the order of the trial court, noting that the object of section 1255a was to reimburse a defendant for attorney's fees which he had paid or to indemnify him for such fees for which he had become liable. The court held that, since the contingency on which the attorney's fees were payable, i.e., the condemnation of the defendants' property, had never occurred, the defendants had incurred no liability for the legal services rendered by their attorneys. Even though the defendants and their attorneys had not anticipated the possibility that the condemnation action would be abandoned, the court nevertheless held that the attorneys could not proceed under the contingent fee agreement and then attempt to repudiate it and collect an attorney's fee once the action was abandoned.

---

[1]Unless otherwise indicated, all statutory references herein are to the Code of Civil Procedure.

The *O'Donnell* case was followed in *City of Los Angeles* v. *Welsh* (1935) 10 Cal.App.2d 441, 443 [52 P.2d 296], where the appellate court stated, "This court has held in *City of Long Beach* v. *O'Donnell*, 91 Cal.App. 760 [267 Pac. 585], that attorney's fees are recoverable by a defendant, when an action to condemn land is dismissed, only in case they have been paid or there exists an obligation to pay them, and that a contingent fee may not be collected as costs where the contingency upon which it was to be paid has not occurred."

Finally, in *Franklin-McKinley Sch. Dist.* v. *Lester* (1963) 223 Cal.App.2d 347 [35 Cal.Rptr. 727], this court stated, "The decision in the instant case is squarely in accord with *City of Long Beach* v. *O'Donnell*, 91 Cal.App. 760 [267 P. 585], and *City of Los Angeles* v. *Welsh*, 10 Cal.App.2d 441 [52 P.2d 296]. [¶] The rule of these two decisions is stated as follows: 'The object of the provision in Code of Civil Procedure § 1255a as to recovery of attorneys' fees is to reimbruse [*sic*] the defendant for fees he has paid, or to indemnify him for such fees as he may have become liable for, provided the fees so paid or incurred are reasonable. Therefore, where the agreement between the defendant and his attorney is for a contingent fee and the contingency has not occurred, a claim for counsel fees is not justified despite the fact that the agreement did not specifically consider the possibility that there might be an abandonment of the condemnation suit.' (17 Cal.Jur.2d 780-781.)" (Pp. 348-349.)

Thus, each of these three cases upon which plaintiff relies involved situations where, on the date when the condemnation action was abandoned by the condemning authority, the defendants and their attorneys were still operating under contingent fee agreements. The defendants in those cases had not agreed to pay their attorneys any fee unless and until a condemnation award was rendered in the defendants' favor. Once the action was abandoned, it had become apparent that no such contingency was going to occur. The courts properly held that since the defendants and their attorneys had elected to operate on a contingent fee basis, they were bound by such arrangement and were not at liberty, after the action had been unexpectedly abandoned, to alter their contract and impose upon the plaintiff a liability for attorney's fees which could never have been asserted against the defendants.

In this instance, had the defendants waited until after plaintiff filed its notice of abandonment before attempting to alter their contractual arrangement with their attorneys, the reasoning of the *O'Donnell*, *Welsh* and *Lester* cases would be controlling. But such is not the case. Here,

defendants elected to release their attorneys and to pay them the reasonable value of the legal services rendered. Their action was taken more than four months prior to the filing of plaintiff's notice of abandonment of the condemnation action. The record contains nothing to suggest that defendants had any way of anticipating that plaintiff was going to abandon the condemnation action; thus, it must be assumed that, for reasons of their own, defendants decided that they would prefer to pay their attorneys the reasonable value of their services rather than one-third of the net gain which might accrue to defendants by successfully defending the condemnation action. There is nothing unreasonable in such a decision. Defendants could have employed their attorneys on a reasonable fee basis from the outset. Had they done so, it is obvious that, under section 1255a, plaintiff would have been required to reimburse them for the attorney's fees paid for services rendered before the action was abandoned. Obviously, at any time before the action was abandoned, defendants were at liberty to alter their contractual arrangement with their attorneys by agreeing to pay them a reasonable fee for services rendered rather than on a contingency basis.

██ Parties to a contract are always at liberty to substitute a new contractual obligation for an old one as long as such change is supported by consideration. Section 1530 of the Civil Code defines "novation" as "the substitution of a new obligation for an existing one." Section 1531 of the Civil Code provides, in pertinent part, that a novation is made "[b]y the substitution of a new obligation between the same parties, with intent to extinguish the old obligation . . . ." Although a novation must be supported by adequate consideration (*Blumer* v. *Madden* (1932) 128 Cal.App. 22, 24 [16 P.2d 319]), the required consideration is present when the original contract is partially executory on both sides, since both parties suffer a legal detriment through the mutual cancellation of executory contractual rights. (*Bush* v. *Vernon* (1955) 135 Cal.App.2d 33, 37 [286 P.2d 903].) ██ Here, the factual situation was one where defendants, being desirous of terminating their contingency fee agreement with their attorneys, offered to assume a new obligation to pay the attorneys the reasonable value of the services thus far rendered in exchange for extinguishing their existing obligation to pay their attorneys one-third of the net difference between the condemnation award and the price which plaintiff had offered to pay for the property. The attorneys agreed to such proposal and accepted the fee of $1,000, and defendants were thereby released from the contingency fee agreement. There was adequate consideration for the novation: the attorneys were relinquishing their right to fees which might have been substantially greater, while

defendants were assuming an obligation to compensate the attorneys for their legal services regardless of the outcome of the condemnation action.

When the conduct of the parties is so analyzed, it becomes apparent that the instant case is distinguishable from the cases cited by plaintiff. In each of those cases, the defendants and their attorneys were still operating under binding contingency fee agreements when the condemnation actions were abandoned by the plaintiffs and dismissed. Once these events occurred, it was no longer possible for a novation to be accomplished relative to the manner in which the attorneys would be compensated for their services. As noted above, novations require consideration, and once the actions were abandoned and dismissed, the attorneys were no longer in any position to furnish consideration, consisting of the extinguishment of their right to receive a potentially higher fee under the contingency fee contract, in exchange for the defendants' promise to pay them the reasonable value of the services they had rendered. Having rendered legal services on a contingent fee basis in actions which had been abandoned, the attorneys in those cases had already gambled and lost. Under such circumstances, any agreements by the defendants to compensate their attorneys for services previously rendered would have been purely gratuitous and were properly held not to be a cost for which the plaintiffs were liable.

This case is quite different. At a time when it appears that defendants and their attorneys had no reason to anticipate that plaintiff would abandon the action, defendants and the Haley firm each agreed to forego a potentially valuable provision of their original contract in order to create, by novation, a different method for the payment of attorney's fees. When viewed in this light, defendants' $1,000 payment to Haley cannot be deemed merely voluntary or gratuitous. It appears to us that it ought not to be treated in any different manner than if defendants had agreed, from the outset of their representation by Haley, to pay that firm the reasonable value of its services.

Since it appears that the three cases cited by plaintiff furnish the only basis for the trial court's decision to deny defendants recovery of the $1,000 fee paid to Haley, we conclude that the trial court's order must be reversed insofar as it disallows defendants' recovery of such fee.

■ Defendants' remaining contention on appeal is that the trial court erred in refusing to award them the reasonable value of Haley's legal services in preparing and filing the motion to set aside part of the abandonment and the motion for leave to file a cross-complaint in inverse condemnation. Defendants assert that the purpose of both of these motions was to protect defendants' right to be compensated for loss of rental income caused by the pendency of the condemnation action. They again point to section 1255a, subdivision (c), which provided for the recovery of reasonable attorney's fees where such fees were "reasonably and necessarily incurred to protect the defendant's interests in preparing for the condemnation trial, during the trial, *and in any subsequent judicial proceedings in the condemnation action . . . .*" (Italics supplied.) Defendants argue that it was reasonable and necessary for them to seek compensation for the lost rental income in the condemnation action. (See *Klopping* v. *City of Whittier* (1972) 8 Cal.3d 39, 58 [104 Cal.Rptr. 1, 500 P.2d 1345].) They deny that they were required to assert such claim by commencing a separate inverse condemnation action against plaintiff. Defendants point out that prior to commencing an inverse condemnation action, they were required to comply with section 911.2 of the Government Code by filing a claim against plaintiff no later than one year after the accrual of their cause of action. They remind us that plaintiff's condemnation action against defendants had been pending more than four and one-half years when plaintiff elected to abandon it and that they had filed no claim against plaintiff during said period because they believed that they would be compensated for their lost rental income in the condemnation action. Defendants insist that when plaintiff abandoned the condemnation action, it was entirely reasonable for them to seek to assert a cross-complaint for lost rental income in said action because, if they pursued their alternative remedy of commencing a separate inverse condemnation action, there was a very distinct possibility that the damages recovered in such action would be limited to the one-year period preceding the filing of defendants' claim against plaintiff. (*Stone* v. *City of Los Angeles* (1975) 51 Cal.App.3d 987, 996-997 [124 Cal.Rptr. 822].) Defendants reason that it was in their best interests to assert the claim for lost rental income in the condemnation action since, in that manner, they would not be bringing suit against plaintiff; thus they would be exempt from the requirement of filing a claim against plaintiff. Defendants also contend that, by asserting their right to lost rental income in the condemnation action, they would ensure that, as to their cross-complaint, the statute of limitations was tolled on the date when plaintiff commenced the condemnation action. (*Trindade* v. *Superior Court* (1973) 29 Cal.App.3d 857, 860 [106 Cal.Rptr. 48].)

In response to these arguments, plaintiff asserts that there is nothing in the record to suggest that defendants were contractually obligated to pay the Haley firm for its legal services rendered after the abandonment. Plaintiff further contends that once a notice of abandonment is filed in a condemnation action, the defendant property owner knows that the action will not go to trial, that his property will not be taken and that it would be an act of futility for him to file any document in the action other than a memorandum of costs and disbursements listing those items which the plaintiff is obligated to pay under subdivision (c) of section 1255a. Plaintiff concedes that subdivision (b) of section 1255a (now § 1268.510, subd. (b)) provided that the court may, upon motion, set aside the abandonment if it determines that the position of the moving party has been substantially changed to his detriment in justifiable reliance upon the proceeding and such party cannot be restored to substantially the same position as if the proceeding had not been commenced. However, plaintiff denies that defendants could make any showing that they had made a change of position or could not be restored to their original position. Plaintiff also contends that, although there may be a partial abandonment of a condemnation action in a situation where there is a reduction in the amount of property sought to be condemned, there can be no partial abandonment where, as here, the condemning authority no longer seeks to acquire any part of the real property subject of the action. Under such circumstances, plaintiff argues that the court has no authority to retain the action for the purpose of determining an issue such as defendants' right to recover lost rental income.

Plaintiff's argument that defendants were not obligated to pay Haley for its legal services in preparing and filing the two post-abandonment motions is not persuasive. The parties' agreed statement shows that after defendants and Haley agreed to cancel their contingent fee arrangement and defendants had paid Haley the reasonable value of the services previously rendered, plaintiff filed its notice of abandonment and that defendants thereafter requested Haley to pursue, on their behalf, whatever legal rights remained to them. Since this request was made after the extinguishment of the contingent fee arrangement, the request can only be construed as a promise by defendants to pay Haley the reasonable value of the legal services yet to be rendered.

Plaintiff's remaining arguments are essentially an attempt to establish that defendants' two post-abandonment motions were without merit and that the trial court was correct in denying them.

The propriety of such ruling is not before us on appeal. The only question remaining is whether these motions were filed in good faith, and in the belief that they were reasonable and necessary to protect defendants' interests in the condemnation action. The answer is found, in part, at least, in the language of the California Supreme Court in *Decoto School Dist.* v. *M. & S. Tile Co.* (1964) 225 Cal.App.2d 310, at pages 314-315 [37 Cal.Rptr. 225]: "In our opinion, the letter and spirit of section 1255a is to make the defendant whole for the reasonable attorney fees incurred by him in connection with the defense of an eminent domain action which the condemner has voluntarily abandoned. . . . [¶] It is a basic rule in eminent domain proceedings that the party seeking condemnation should not only be required to pay his own costs, but all proper costs of the owner of the land incurred in good faith."

Defendants have furnished us with a convincing explanation of why they deemed it necessary, for the protection of their interests in the condemnation action, to file the motion to vacate part of the abandonment and the motion for leave to file a cross-complaint for lost rental income. It should be noted, also, that in *Klopping* v. *City of Whittier, supra,* 8 Cal.3d at page 58, it was held that a defendant who had allowed a condemnation action to go to judgment without asserting his claim for lost rental income was thereafter barred from asserting such claim in an inverse condemnation action. Plaintiff made no attempt in the trial court to demonstrate that the Haley firm devoted an undue amount of time to the preparation of the two post-abandonment motions or that Haley charged an unreasonable fee for such services. It would appear, therefore, that the trial court should have allowed defendants to recover the $1,800 attorney's fee for the performance of such services.

The order appealed from is reversed insofar as it granted plaintiff's motion to tax costs and disallowed defendants' claim for attorney's fees in the amount of $2,800.

Taylor, P. J., and Kane, J., concurred.